[Civil No. 1804.   Filed June 3, 1920.]

[190 Pac. 81.]

# FRANK STOLAROFF, LILLIE STOLAROFF and THE BANK OF DOUGLAS, Appellants, v. BASSETT LUMBER COMPANY, Appellee.

1. MECHANICS' LIENS—NO IMPLIED NOTICE TO MATERIALMAN OF SOURCE OF MONEY CREDITED TO CONTRACTOR'S ACCOUNT OTHER THAN INTENDED BY OWNER.—Where land owner would not trust contractor and made check out to third person to pay materialmen, and such third person went to a materialman with the contractor and indorsed and presented such check, and both directed that it be applied on the account of the contractor for materials furnished on another job, the fact that the check was made by the owner furnished no reasonable or natural clue to the materialman that the third person had received the check in a fiduciary capacity or as agent or trustee of the property owner, and that he was about to misappropriate the funds; such third person having been in the habit of aiding the contractor financially in the conduct of his business.

2. MECHANICS' LIENS—NOTICE OF SOURCE OF MONEY PAID ON ACCOUNT OF CONTRACTOR TOO LATE TO AFFECT LIABILITY OF OWNER, WHERE PAYMENT WAS NOT APPLIED AS OWNER INTENDED.—Where owner did not trust contractor, and made check to a third person to pay accounts of materialmen, and such third person and contractor gave the check to a materialman, and directed him to apply it upon the account of the contractor for material furnished upon a different job, and the materialman discharged such other account on its books and gave the contractor a receipt, a notice thirty minutes thereafter that the third person misapplied the check was too late to affect the equity of the materialman.

3. MECHANICS' LIENS—MATERIALMAN APPLYING PAYMENT FROM CONTRACTOR TO CERTAIN ACCOUNT MUST HAVE NOTICE OF EQUITY IN LAND OWNER.—In order to deprive a materialman of the right to apply a payment made by a contractor to an account directed by the contractor, it must know that it is receiving money of a certain owner, or the facts must be sufficient to put it on notice of some equity in such owner.

APPEAL from a judgment of the Superior Court of the County of Cochise. Alfred C. Lockwood, Judge. Affirmed.

Mr. David Benshimol, for Appellants, Frank Stolaroff and Lillie Stolaroff.

Messrs. Boyle & Pickett, for Appellant, The Bank of Douglas.

Messrs. Manatt & Stephenson and Messrs. McFarland & Sames, for Appellee.

BAKER, J.—The plaintiff, Bassett Lumber Company, sought to establish a mechanic's lien against the property of the defendant Frank Stolaroff, to the amount of $1,326.40, for lumber and other materials sold at that sum to the defendant M. Morris, who, under a contract with Stolaroff, used the lumber and materials in constructing a dwelling-house for Stolaroff on the property against which the lien is sought to be established. Stolaroff pleaded payment in full of the plaintiff's claim. Notice of the lien was duly filed and served. The case was tried before a jury, and after the close of all of the evidence the judge instructed the jury to return a verdict for the plaintiff in the amount claimed, which was done, and thereupon judgment was rendered in favor of the plaintiff for the said sum of $1,326.40, against the defendant M. Morris, which amount was declared to be a lien on the Stolaroff property, and superior to a mortgage held by the defendant, the Bank of Douglas, on the property. The defendant M. Morris did not appeal. Frank Stolaroff, Lillie Stolaroff and the Bank of Douglas are the only parties appealing.

The action of the trial judge in directing a verdict is the only assignment of error possessing any merit. It is urged that the directed verdict was unauthorized by the evidence.

The undisputed facts show the following case: Morris, as contractor, was employed by Stolaroff to put up a dwelling-house for him on lots 31 and 32, block 22,

of the Clauson addition in the city of Douglas, for the contract price of $3,300. The lumber and materials used in the construction of the building under the contract was bought by Morris from the Bassett Lumber Company. Stolaroff knew that Morris had not paid for the lumber and materials, and he promised Bassett Lumber Company that he would see that its account was paid. Morris, at the time he was performing the Stolaroff contract, was indebted to Bassett Lumber Company for lumber and materials which he had purchased and used in another building constructed by him for another party. This account was known as the Itule account, and was in the sum of $1,800. Stolaroff lacked confidence in the integrity of Morris to pay the Bassett Lumber Company's claim if he should intrust him with the money for that purpose, and after some discussion of the matter with Morris, Stolaroff decided to give the money to one Jake Kerner and trust him to make the payment. In pursuance of this determination, Stolaroff gave Kerner a check on the Bank of Douglas for the sum of $1,688, and instructed him to pay the Bassett Lumber Company's claim, and another claim held by the Brophy Carriage Company, out of the check. The check was made payable to Kerner direct, who, in company with Morris, took it to the agent of the Bassett Lumber Company. Kerner indorsed the check and handed it to the agent. Kerner and Morris jointly instructed the agent to place the amount of the check to the credit of the Itule account, Morris furnishing some $200 in cash so that this account could be paid in full. The agent, acting under the instructions of Morris and Kerner as to the application of the funds, placed the check to the credit of the Itule account, and discharged the account on the books of the company, delivering Morris a receipt in full. In this transaction nothing was said about the account which Morris owed for the lumber and mate-

rials used in the Stolaroff building, and no mention was made of the circumstances under which Kerner obtained possession of the check. In a short while after the completion of this transaction, say within thirty minutes, and upon inquiry by the agent as to when the Morris account for lumber and materials used in the Stolaroff building would be paid, Kerner exhibited to the agent a copy of a written agreement which he had with Stolaroff in reference to the payment of the claims against the Stolaroff property. This agreement had been entered into between Stolaroff and Kerner at the time Stolaroff gave Kerner the check. The instrument was lost at the time of the trial, and the parol evidence as to its terms or contents was conflicting. The defendant's testimony, however, tended to show that it was a guaranty on the part of Kerner that he would pay the claim of the Bassett Lumber Company out of the specific check which Stolaroff had given him. It further appears from the uncontradicted testimony that Kerner had been furnishing Morris with money to carry on his contracting business, and that fact was known to the Bassett Lumber Company. In fact, Morris had informed the company some time prior to the transaction in question that he was going to borrow the money from Kerner to pay the Itule account.

It is insisted that under this evidence Bassett Lumber Company, in equity and good conscience, should have placed a sufficient amount of the check to the credit of the account for lumber and materials sold to Morris and used in the Stolaroff building to have satisfied it, and not to have placed the check to the credit of the Itule account. It is insisted that the transaction should be treated equitably as payment of the first-mentioned account. But we do not think there is any evidence in the record tending to support this claim. There was nothing in the transaction to put the Bassett Lumber Company on notice, either

actual or constructive, that the check should be applied to the payment of the first-mentioned account. Had the check been made payable to Morris, and by him indorsed to the Bassett Lumber Company, some contention might be made that it conveyed notice to the Bassett Lumber Company of the source of the money, and that it should be credited to the Morris account for lumber and materials used in the Stolaroff building, and not to the Itule account. *Flexner Univ. School* v. *Strassel Gans Paint Co.* (Ky.), 112 S. W. 686; *Peterson* v. *Shain,* 4 Cal. Unrep. 122, 33 Pac. 1086; *Bowles Co.* v. *Clark,* 59 Wash. 336, 31 L. R. A. (N. S.) 613, 109 Pac. 812. Especially would this be true had the check borne any distinguishing words, such as "on contract" or "trustee" or "agent." 8 C. J. 515; *Hughes & Co.* v. *Flint,* 61 Wash. 460, 112 Pac. 633. But the check was made payable to Kerner or bearer, and was for a larger amount than the Morris account for lumber and materials used in the Stolaroff building. It bore no words or signs importing any equity in the drawer so as to exempt it from the provisions of the negotiable instrument law (Civ. Code 1913, pars. 4146–4339). Bassett Lumber Company might reasonably have assumed that Kerner was the absolute owner of the check, and that he had received it in the ordinary course of business. The fact that the check was made by Stolaroff, and represented funds which belonged to him when the check was made furnished no reasonable or natural clue to the Bassett Lumber Company that Kerner had received the check in a fiduciary capacity, or as agent or trustee of Stolaroff, and that he was about to misappropriate the funds in the payment of the Itule account.

Stolaroff promised to pay the Morris account for lumber and materials used in his building, but it was perfectly reasonable for the Bassett Lumber Company

to assume that Stolaroff would fulfill his promise in a usual business method by making the payment in cash or by sending a check for the amount payable to the company. The company was not called upon to suppose for a moment that Stolaroff intended to pay the account by sending a check payable to Kerner in a greater amount than such account.

We see nothing suspicious, at least nothing sufficient to put the Bassett Lumber Company upon inquiry, in the circumstances that Kerner and Morris were together and both took part in directing the application of the funds represented by the check to the payment of the Itule account. The Bassett Lumber Company might reasonably have inferred that Kerner was advancing money to enable Morris to pay the account. The undisputed evidence shows that Kerner had been in the habit of aiding Morris financially in the conduct of his contracting business, and this fact was known to the company. Furthermore, Morris had informed the company that he was going to obtain money from Kerner to pay the Itule account.

If full faith and credit be given to the statement of the defendant's witnesses that the written instrument which Kerner gave to Stolaroff at the time he obtained the check was, in effect, a guaranty that he (Kerner) would pay the Morris account for lumber and materials used in the Stolaroff building out of the specific check, yet the undisputed fact remains that knowledge of this instrument did not come to the agent of the Bassett Lumber Company until after the Itule account had been paid and discharged on the books of the company, and a receipt given to Morris, and the relation of the Bassett Lumber Company as owner of the check had become fixed and absolute. The notice came too late to affect the equities of the company, and was immaterial. 8 C. J. 507.

In several cases it has been held that the owner of a building cannot object to the application of

payments as between the contractor and the lien claimant, where the lien claimant had no knowledge that the money paid to him was furnished by the owner. These cases are not exactly in point on the facts, but we think they establish the equitable principle applicable to the case at bar. In order to deprive the Bassett Lumber Company of the right to apply the payment to the Itule account, the company must have known that it was receiving Stolaroff's money, or the facts must have been sufficient to put the company on notice of some equity in Stolaroff. *Thacker* v. *Bullock Lbr. Co.,* 140 Ky., 463, 131 S. W. 271; *Flexner Univ. School* v. *Strassel Gans Paint Co.* (Ky.), 112 S. W. 686; *Waterman* v. *Younger,* 49 Mo. 413; *Bohn* v. *Wilson,* 53 Or. 490, 101 Pac. 202; *Portland F. Co.* v. *C. K. Spaulding L. Co.,* 64 Or. 316, 130 Pac. 52.

In *Grace Harbor Lbr. Co.* v. *Ortman,* 190 Mich. 429, 157 N. W. 96, it is held that if the owner wishes to obtain a credit for money paid by him to the contractor who turns over the money to the materialman, it is his duty to see that it is properly applied.

There is no doubt from the testimony that Stolaroff was deceived by Kerner, but the loss must fall upon him, and not upon the Bassett Lumber Company.

The judgment of the lower court is affirmed.

CUNNINGHAM, C. J., and ROSS, J., concur.