No. 24,221.

J. P. SKINNER and H. C. GATRELL, *Appellees,* v. (THE QUADRANGLE OIL COMPANY, *Defendant.*) THE ANTHONY CASING SYNDICATE, et al., *Appellants.*

SYLLABUS BY THE COURT.

1. MECHANICS LIEN—*Labor Performed in Drilling Oil Well.* A partnership may obtain a lien under sections 4996 and 4997 of the General Statutes of 1915 for labor performed in drilling an oil or gas well under a contract with those who have contracted with the owner.

2. SAME—*Lien attaches to Casing and Drilling Rig.* The lien described in sections 4996 and 4997 of the General Statutes of 1915 will attach to the casing and drilling rig furnished by the owner of the lease and used in drilling a well.

3. SAME—The fact that the owner of the lease retains title to the casing and drilling rig used in drilling the well will not defeat the right to a lien on the casing and rig.

4. SAME—*Lien Attaches for Full Contract Price of Labor.* Such a lien as is described in the preceding paragraphs of this syllabus attaches for the full contract price of the labor where the owner of the lease does not fix any price to be paid for drilling the well.

5. SAME—*Compensation for Time Lost in Waiting for Supplies.* Compensation for time consumed in waiting for supplies to be furnished by the owner may be included in the lien where the contract provides that the driller shall be paid for such time.

Appeal from Marion district court; CASSIUS M. CLARK, judge. Opinion filed February 10, 1923. Affirmed.

*E. C. Wilcox,* of Anthony, *W. H. Carpenter,* and *W. R. Carpenter,* both of Marion, for the appellants.

*J. B. McKay,* of El Dorado, *R. L. King,* and *Roscoe King,* both of Marion, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: In this action, the plaintiff seeks to foreclose a mechanic's lien on an oil and gas lease, and on the casing, derrick, and other property connected with a well drilled for oil or gas on the leases. Judgment was rendered for the plaintiff. The Anthony Casing Syndicate and those composing the syndicate appeal.

The Anthony Casing Syndicate owned a five-eighths interest in the oil and gas lease and entered into a contract with the Quadrangle Oil Company by which that company acquired a four-eighths interest in the lease, for one dollar and other good and valuable consideration. The Quadrangle Oil Company entered into a contract with the plaintiffs by which the company agreed to furnish the materials for drilling the well and by which the plaintiffs agreed to perform the labor. The contract between the Anthony Casing Syndicate and the Quadrangle Oil Company provided that the syndicate should furnish the casing and rig for drilling the well, and provided that under certain conditions the casing and rig should be returned to the syndicate. The casing and rig were furnished by the syndicate and were used by the plaintiffs in drilling the well.

1. The first and probably the most important contention of the appellants is that the plaintiffs are not entitled to a lien for the reason that the contract between the Anthony Casing Syndicate and the Quadrangle Oil Company was only an assignment of a half-interest in the lease to the Quadrangle Oil Company. The Quadrangle Oil Company acquired its interest in the lease from the Anthony Casing Syndicate, which retained an interest in the lease. The defendant, to support its contention, argues that the Quadrangle Oil Company did not agree to drill a well on the property. This argument is not good. Although the contract, called an assignment by the defendants, does not contain an agreement to drill the well, yet there is that in the assignment, in the evidence, and in another contract between the syndicate and the Quadrangle Oil Company which shows that the consideration for the interest in the lease acquired by the Quadrangle Oil Company was that the company would drill a well on the property. That company contracted with the plaintiffs, and the plaintiffs drilled the well. They were not paid for their services. They were subcontractors and came within sections 4996 and 4997 of the General Statutes of 1915. Section 4996 reads:

"Any person, corporation or copartnership who shall under contract, express or implied, with the owner of any leasehold for oil and gas purposes . . . perform labor or furnish material, machinery, and oil-well supplies used in the digging, drilling, torpedoing, completing, operating or repairing of any oil or gas well . . . shall have a lien upon the whole of such leasehold or oil pipe-line or gas pipe-line, or lease for oil and gas purposes, the building and appurtenances, and upon the material and supplies so furnished, and upon said oil and gas well for 'which they were furnished, and upon all the other oil wells, fixtures and appliances used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished and labor performed . . ."

Section 4997 reads:

"Any person, copartnership or corporation who shall furnish such machinery or supplies to a subcontractor under a contractor, or any person who shall perform such labor under a subcontract with a contractor, or who has an artisan or day laborer in the employ of such contractor, and who shall perform any such labor, may obtain a lien upon said leasehold for oil and gas purposes or any gas pipe-line or any oil pipe-line from the same tank and in the same manner and to the same extent as the original contractor for the amount due him for such labor, as provided in section 1 of this act."

This case is closely analagous to *Meadows v. Oil Co.*, 108 Kan. 228, 194 Pac. 916, where this court said:

"Such a lien will attach where the labor is performed for, or the material is furnished to, the owner of the lease, to his agent, or to a contractor, for the development or improvement of the lease or of the property used in connection therewith." (Syl. ¶ 2.)

The plaintiffs in this action contracted with the Quadrangle Oil Company, which had contracted with the Anthony Casing Syndicate; and the plaintiffs, in obedience to their contract, performed labor for which they were entitled to a lien.

2. The defendant argues that plaintiffs' lien, if any they have, does not attach to "fixtures and appliances used in operating for oil and gas upon the leasehold," and that the plaintiffs are not accorded the same rights as those that are given to persons performing labor or furnishing material. Section 4996 gives a lien to those who perform labor or furnish material under contract with the owner. Under section 4997, any person, copartnership or corporation, who shall furnish machinery or supplies to a subcontractor or who shall perform labor under a subcontractor may obtain a lien upon the leasehold in the same manner and to the same extent as the original contractor. The two sections of the statute must be read together. If a lien is to be obtained by a subcontractor under section 4997 in

the same manner and to the same extent as the original contractor may obtain one under section 4996, it must attach to the same property that is subject to the lien of the original contractor.

3. The appellants contend that the plaintiffs are not entitled to a lien on the property connected with the well and used in drilling it, for the reason that the Anthony Casing Syndicate, in its contract with the Quadrangle Oil Company, retained the title to that property. This contention is not good for the reason that the statute gives a lien on all the property. The Anthony Casing Syndicate could not prevent the lien from attaching to its property if it had contracted directly with the plaintiffs, and it cannot prevent the lien from so attaching by contracting with an intermediate party. A lien may be obtained whenever labor is performed in drilling an oil well under a contract made with the owner or with those who have contracted with the owner.

4. It is contended that "the contract price between the owner and the original contractor is a fund out of which those who furnish supplies and labor are entitled to prorate, and can claim no lien above the contract price." No contract price was fixed between the Anthony Casing Syndicate and the Quadrangle Oil Company. The contract between the company and the plaintiffs fixed the price that should be paid. They claim a lien for the contract price, not for the price agreed to be paid by the syndicate. When the plaintiffs are paid the price named in their contract with the Quadrangle Oil Company, their lien will be discharged.

5. A large amount of the plaintiffs' claim is for what is named in the appellants' brief as "waiting time." The contract between the plaintiffs and the Quadrangle Oil Company provided—

"It is further understood and agreed, by and between the parties to this contract, that in the event of a shut down, at the request of the parties of the second part, the first parties shall receive the sum of $30 per day: *Provided, however,* that the shut down is caused by the failure of the parties of the second part to furnish the necessary equipment, such as casing, and other necessary equipment, to be furnished by the parties of the second part; then and in that event said parties of the first part shall receive $80 per day during such shut down or delay. In the event that under-reaming is necessary, parties of the first part shall receive the sum of $80 per day for such work.

"In the event of faulty, defective or collapsed casing, parties of the first part shall receive $80 per day while removing and replacing same."

The items covered by "waiting time" are described as "waiting on water well," "waiting on 15-inch casing," "waiting on fuel oil,"

"waiting on clamps and nipple," and "shut down by orders." These items come within the terms of the contract and were provided for therein.

It is argued that because nothing was added to the well during "waiting time," no lien can attach therefor—that liens are given for improvements made to property. This argument is not good, because under the contract time consumed in waiting for materials or delay caused by the Quadrangle Oil Company must be considered as a part of the labor necessary to drill the well. In such work, delays must occur, and labor, not directly connected with the well, must be performed before the well can be completed. All becomes a necessary part of the labor in putting down the well, and the statute contemplates that a lien shall attach for all that is necessary to be done, including waiting for supplies and time lost when operations are shut down on account of the fault of the owner.

No error appears. The judgment is affirmed.