No. 24,511.

J. E. WOODMANSEE et al., *Appellees*, v. JOHN BERTENSHAW as RE-
CEIVER of the W. R. S. OIL AND GAS COMPANY et al., *Appellants*.

SYLLABUS BY THE COURT.

1. MECHANIC'S LIEN—*Lien for Labor and Material Attaches to a Leasehold
   Interest in Oil and Gas Lands.* A lien for labor and material will attach
   to a leasehold covered by an oil and gas lease and to all the property used in
   connection therewith, under sections 4996 and 4997 of the General Statutes
   of 1915. Such a lien will attach whether the labor is performed for, or the
   material is furnished to, the owner of the lease, to his agent, or to a con-
   tractor, for the development or improvement of the lease or of the property
   used in connection therewith. Following *Meadows v. Oil Co.,* 108 Kan.,
   228, 194 Pac. 916.

2. SAME—*Receiver May Appeal from Judgment of Court Appointing Him.* A
   receiver, represents all the parties interested in the estate which he is ap-
   pointed to administer, and while he may not, ordinarily, appeal from an
   order or decree of the court administering the assets in his hands, or merely
   determining the relative rights of creditors, he may conduct an appeal if
   it is in the interest of the estate, and for the benefit of all the creditors and
   stockholders.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge.
Opinion filed June 9, 1923. Affirmed in part and reversed in part.

*Claud J. Bryant,* in Independence, for the appellants.
*Chester Stevens,* of Independence, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: John Bertenshaw, receiver for the W. R. S. Oil and
Gas Company, appeals from a certain judgment and liens allowed by
the district court of Montgomery county.

On the 20th of April, 1918, the W. R. S. Oil and Gas Company sold
an undivided three-fourths interest in certain oil and gas leases to
the Syndicate Oil Company, of Denver, Colorado, for $22,500, pay-
able in installments. For convenience the W. R. S. Oil and Gas Com-
pany will be referred to as the Gas company and the Syndicate Oil
Company as the Oil company. The contract, with an assignment
of the leases, was deposited in the Citizens First National Bank of
Independence, Kan., to be delivered upon the payment by the Oil
company of the amounts provided for in the contract, and upon fail-
ure to make such payments, the contract to be null and void, and the
assignments and all papers to be returned, as liquidated damages,

to the Gas company. After the execution of the above contract, the Oil company entered into a contract with H. E. Wilcox, under the name of the Independence Drilling Company, for the drilling of eight wells upon the leases, for which the Oil company agreed to pay three-fourths, and Wilcox one-fourth of the cost. It was provided that Wilcox should act as superintendent of the Oil·company and receive for such services a stated salary.

Wilcox was the president and the owner of an undivided one-fourth interest in the Gas company. Under his contract with the Oil company, he began and carried forward drilling operations. On November 29, 1918, the Oil company made a payment of $2,500 to the Gas company, making an aggregate total payment on its contract of $15,000. This was the last payment made on the contract.

About May 8, 1918, the Beeler & Campbell Supply Company began furnishing certain oil and gas well supplies upon the order of Wilcox, and continued thereafter to furnish such supplies from time to time until November 19, 1918, when it filed a mechanic's lien for material furnished and delivered upon the property, in the sum of $1,400. December 10, 1918, Wilcox filed a lien for $4,735.40. July 14, 1919, the American Glycerin Company commenced an action in the district court of Montgomery county against the Oil company and the Gas company, and levied an attachment on the property of the two companies. It also named, as co-defendants, the Independence Drilling Company (H. E. Wilcox), The Citizens First National Bank of Independence, the Beeler & Campbell Supply Company, and others. The Bank filed an answer and cross-petition, alleging a balance of indebtedness of the Gas company in the sum of $1,638, secured by a mortgage covering the property which had been sold to the Oil company, which was executed by H. E. Wilcox, as president, and J. E. Woodmansee, as secretary. (The Bank's claim was later allowed and paid and is not now in controversy.)

On July 24, 1919, J. E. Woodmansee filed a petition alleging the insolvency of the Gas company, and praying for the appointment of a receiver. On the same day the Gas company also moved that a receiver be appointed for it.

On July 24, 1919, John Bertenshaw was duly appointed receiver, and thereafter qualified and took possession of the property of the company. Thereafter the two actions were, by an order of the court, consolidated and the Hon. Charles B. Shukers was appointed referee to hear both actions, make findings of fact and conclusions of law.

Woodmansee v. Oil and Gas Co.

A hearing was had before the referee, who later filed his findings, those pertinent here were, in substance, as follows:

1. That, on and prior to the 20th day of April, 1918, the Gas Company was the owner of (certain oil and gas leases).

2. That, on said 20th day of April, 1918, the Gas company entered into a contract with the Oil company, by the terms whereof, it agreed to sell, assign and transfer to the Oil company an undivided three-fourths interest in the above mentioned leases for $22,500, to be paid in installments.

3. That, on or about the first of May, 1918, the Oil company went into actual possession of the leases and thereafter paid on its obligation under the contract, the sum of $15,000, the last payment on the principal being made November 29, 1918, and thereafter, on or about January 1, 1919, the Oil company secured an extension of the contract for a period of 90 days from January 1, 1919.

4. That the possession by the Oil company of the leases and lease-holds from about May 1, 1918, to about May 1, 1919, was with the knowledge and consent of the Gas company.

8. That the entry and possession of the Oil company was lawful, and that the development and operation of the company, was for and on its behalf, and for and on behalf of the Gas company; that both companies were liable for the costs of the development, including the drilling of wells, purchase of material, and labor incurred in the development.

10. That the Beeler & Campbell Supply Company had a valid lien for $1,360.30;

11. That the American Glycerin Company had a second lien for $153.80;

12. That H. E. Wilcox, as the Independence Drilling Company, had a third lien in the sum of $3,251.55;

13. That the Gas company had a fourth lien for $7,500.

The referee concluded, as a matter of law, that the parties were entitled to liens according to the findings above stated. A supplemental report was afterwards filed, showing the allowance of a claim of Black, Sivalls & Bryson for $119.60, but it was held not to be a lien upon the property.

The findings of fact and conclusions of law returned by the referee were approved by the court and judgment allowed accordingly.

The receiver contends that the court committed error in the allowance of the claims and liens as set out. He urges that the Gas

company was entitled to a first lien on all of the property and proceeds by virtue of the unpaid portion of the amount due on its contract of sale to the Oil company.

The record does not disclose that the contract between the Gas company and the Oil company was ever filed for record. The referee found that the possession by the Oil company of the leases and leaseholds was with the knowledge and consent of the Gas company. We are of the opinion that the Gas company is not, therefore, in position to claim a prior lien on the property. (Gen. Stat. 1915 § 6508; *Greeno v. Barnard*, 18 Kan. 518; *Bank v. Randall*, 98 Kan. 744, 160 Pac. 207.)

We note that, in the hearing, the claim of H. E. Wilcox was not admitted. When offered in evidence it was objected to by the receiver as being incompetent, irrelevent and immaterial. The referee stated:

"Well, the objection will be sustained as to its being any evidence of the lien in favor of H. E. Wilcox, but will be admitted for what it may be worth on the Beeler & Campbell Supply Company claim; the court finds that he lost his lien for the reason—by not foreclosing it within one year."

The record discloses testimony of officers of the Oil company denying some of the principal items, at least, of the Wilcox claim. It appears that the court was not justified, under the circumstances, in rendering judgment in favor of Wilcox and making the amount thereof a third lien on the property and assets in the hands of the receiver. His judgment must be set aside. Wilcox was president of the Gas company. He was also superintendent of the Oil company in the drilling operations. If he, in good faith, carried out the terms of his contract with the Oil company, he would be entitled to compensation for such services according to its terms. This is a fact to be ascertained by the trial court. There appears, however, no reason for setting aside the other liens allowed by the court.

In *Supply Co. v. Oil Co.*, 110 Kan. 468, 204 Pac. 692, it was said:

"Materials that were used on a gas and oil lease, described in a lien statement were ordered by the president of the corporation owning the lease, or by the wife of the president, or by his son. The materials were received and were used on the lease. *Held*, that the defendant cannot escape liability therefor, although it was not shown that the president of the corporation or his wife, or son, had authority from the corporation to purchase the materials." (Syl. ¶ 6; Gen. Stat. 1915, §§ 4996, 4997; *Meadows v. Oil Co.*, 108 Kan. 228, 194 Pac. 916; *Skinner v. Oil Co.*, 112 Kan. 742, 212 Pac. 684.)

The appellees raise the question of the right of a receiver to ap-

peal from the judgment of the court appointing him. As a general rule, a receiver may not appeal from an order or decree of the court distributing the assets in his hands, or merely determining the relative rights of creditors. However, a receiver represents all the parties in interest, not only the creditors, but the stockholders. It is his duty to faithfully and impartially discharge his duties and to carefully protect the property confided to his keeping. He should, therefore, be diligent in his efforts to protect the estate against questionable claims. The receiver can take no part as between creditors claiming adverse interests in the estate. The parties themselves, who may feel aggrieved by an order of the court, may appeal. Where, however, an appeal is in the interest of the estate, and, therefore, for the benefit of all creditors and stockholders, the receiver should be allowed to conduct an appeal. Ordinarily, however, he should procure permission so to do from the trial court. (*Beilman v. Poe*, 120 Md. 444; *Esmeralde County v. Wildes*, 36 Nev. 526; *Kavanagh v. Bank of America*, 239 Ill. 404; *Pryor v. Bank of America*, 240 Ill. 100; *People v. Brooklyn Bank*, 126 N. Y. Supp. 155.)

The judgment is affirmed, except as to the claim of H. E. Wilcox, doing business as the Independence Drilling Company, as to which it is reversed, and the case remanded for a new trial.