[Civil No. 2884. Filed March 24, 1930.]

[285 Pac. 1037.]

W. M. WATSON and MARIE M. WATSON, His Wife, Appellants, v. JOHN W. MURPHEY, Appellee.

Messrs. Curley & Pattee, for Appellants.

Mr. John C. Haynes, for Appellee.

ROSS, J.—In 1927 the Watsons caused to be constructed a dwelling for their home in Tucson, Arizona. They employed one E. E. Tomlinson, tile-setter and contractor, to furnish tile and set it in their bathroom. It appears that Tomlinson carried no stock of tile, and when he needed any for the Watson job, or any other job, of which he had several just prior to and contemporaneously with the Watson job, he obtained it in the following manner: From plaintiff Murphey, a contractor and builder of Tucson, when he had it in stock, and, when he did not have it in stock, Murphey would order what was desired from California merchants, sometimes in his own name and sometimes in Tomlinson's name. The reason for ordering the tile in Tomlinson's name was because he was a master tile-setter, and some of the California houses would not sell tile to anyone but a master tile-setter. In all cases, however, Murphey paid the California merchants for the tile, and in most instances it was taken from the railroad depot to his warehouse and moved therefrom as needed to the job, a record being kept of the particular job to which it was taken. It appears that one shipment was delivered directly from the railroad to the Watson job. Murphey furnished tile to Tomlinson at

cost, plus twenty-five per cent. As the work progressed, Watson, from time to time, made payments to Tomlinson by check on a local bank, and in this manner paid Tomlinson the full contract price, laboring under the impression that the tile was being furnished by Tomlinson. The latter, when he was paid on account by Watson, would cash check and take some of the cash to pay labor and turn over a portion of it to Murphey to be applied on his general open account. The open account consisted of the account for material furnished Tomlinson for several jobs. When the last payment was made by Tomlinson, Murphey had become aware of his inability to meet his open account, and thereupon credited said payment so that each of Tomlinson's jobs received twenty per cent of what was due on it. This left the Watson job owing Murphey $617.20, for which he filed a lien, and to foreclose which this suit is prosecuted. From a judgment establishing the validity of the lien and foreclosing it, the defendants have appealed.

It is first contended the facts show that Tomlinson, and not Murphey, was the materialman and furnished the tile. This is so, it is said, because under the evidence Murphey was a builder and contractor and not a materialman. It has been said that a materialman is a person in trade, who does not follow the business of contracting to build houses for others, but who keeps for sale some materials that enter largely into buildings. *Curlett* v. *Aaron,* 6 Houst. (Del.) 477; *Hall* v. *Thomas,* (Sup.) 111 N. Y. Supp. 979; *Rhodes* v. *Selvage,* 69 Ind. App. 533, 122 N. E. 352; 40 C. J. 130, § 142. If this definition should be literally accepted, anyone who contracts to build houses would be excluded from its terms notwithstanding he might have a yard, store, supply house, warehouse or other place where he keeps build-

ing material for sale to other builders and contractors. We do not construe it to mean that a builder and contractor may not also be a materialman and entitled to a lien as such for material furnished when it goes into a building being constructed by someone other than himself. It seems that, while Murphey was a builder and contractor, he kept a warehouse of material, including tile, from which he sold tile to Tomlinson for use on several jobs.

It is also contended the evidence shows that Murphey was a financial backer of Tomlinson, that is, that he was engaged in extending credit to Tomlinson so that the latter might make and carry out tiling contracts. If the agreement between Murphey and Tomlinson were one by the terms of which Murphey agreed to advance to Tomlinson money with which to pay for labor and material to carry out his contracts, it would fall within the rule laid down in *Hardaway & Prowell* v. *National Surety Co.*, (C. C. A.) 150 Fed. 465, cited and relied upon by defendants. But the contract was, as we gather, that Murphey would sell Tomlinson tile for the Watson job, Tomlinson agreeing at all events to pay therefor to Murphey what such tile cost, plus twenty-five per cent.

Under the statute governing mechanics' and materialmen's liens, paragraph 3639, Civil Code of 1913 (section 2020, Revised Code of 1928), every person who furnishes material in the construction of any building has a lien thereon for such material, whether furnished at the instance of the owner or the "contractor . . . having charge or control of the construction . . . " who "shall be held to be the agent of the owner for the purposes" of such construction, the reasonable value of which is a liability of the owner. Tomlinson was, therefore, in the ordering of the tile to be used in defendants' bathroom, the

agent of the defendants. The liability of the defendants for the purpose of a lien is the same as if they had personally ordered the materials.

It is also contended that Murphey should have credited payments made to him by Tomlinson during the construction period on the Watson job and not on open account. If such payments had been made to Murphey with Watson's check, this claim, under the rule announced in *Stolaroff* v. *Bassett Lumber Co.*, 21 Ariz. 490, 190 Pac. 81, might have some force, but the payments were all made in cash. Murphey "had no knowledge that the money paid to him was furnished by the owner" and no notice that Watson had any equity in such money.

But defendants say, if the lien be allowed under the facts of this case, the owner has no way of protecting himself. If that were true, it would be the fault of the law, but we do not agree that the owner cannot protect himself. He could take from the contractor a bond, or, neglecting to do that, he could make sure by inquiry and investigation as to who is furnishing the material and see to it that payments made on account are properly applied. Defendants took neither of these precautions, and while it is a misfortune and a serious hardship to have to pay for the tiling the second time, it all arises from their placing too much faith and confidence in Tomlinson.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.