(637 P.2d 464)
No. 52,481

INTERLAKE, INC., *Plaintiff-Appellee and Cross-Appellant,* v. THE KANSAS POWER & LIGHT COMPANY, *Defendant-Appellant,* and ABRAHAM DAVIS, *Defendant.*

Opinion filed December 10, 1981.

*James D. Waugh,* of Cosgrove, Webb & Oman, of Topeka, and *David S. Black,* of Kansas Power & Light Company, of Topeka, for the appellant.

*Irwin E. Blond,* of Lathrop, Koontz, Righter, Clagett & Norquist, of Kansas City, Missouri, *Larry Winn, III,* of Bennett, Lytle, Wetzler & Martin, of Prairie Village, and *Robert J. O'Connor,* of Hershberger, Patterson, Jones & Roth, of Wichita, for the appellee.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and HARMAN, C.J. Retired, assigned.

HARMAN, C.J. Retired: This is an action against the trustee in bankruptcy of a pipeline dealer for a judgment of $118,282.67 and further to have that judgment declared a lien on gas pipeline property in Meade County. Plaintiff prevailed in trial to the court upon stipulated facts. The pipeline property owner alone has appealed. The issue here is the propriety of the lien adjudication under our lien statutes.

Defendant-appellant The Kansas Power & Light Company owned a certain pipeline, pipeline gathering system and pipeline easements in four Kansas counties, including Meade County. (The case now before us involves only Meade County property.) It desired to and did construct pipelines in these counties, acting it says, as its own general contractor. KPL verbally contacted Continental Pipe and Tube Corporation at St. Louis, Missouri,

for quotations on needed pipe. Continental determined that plaintiff-appellee, Interlake, Inc., Newport, Kentucky, would be the source of the pipe and so informed KPL. In April 1976, KPL verbally ordered the pipe from Continental, specifying it should be shipped to "KPL c/o Plexco," a rust-proofing pipe-coater in Franklin Park, Illinois. That same day Continental issued its written purchase order to Interlake for the specified pipe quantities, with a total purchase price of $443,744.93. Continental's purchase order specified that the pipe was to be shipped via rail to Kansas Power & Light Co., c/o Plexco, 3240 N. Mannheim Road, Franklin Park, Illinois. Further directions stated: "1. Reship to Kansas City [sic] Power & Light, Meade, Kansas on completion of coating. 2. Advise purchaser of car number and contents prior to shipment."

On May 19, 1976, KPL issued its written purchase order to Continental confirming its prior verbal order; transportation was to be by rail from Newport, Kentucky, prepaid and allowed, to Meade and Ashland, Kansas. Between June 1 and July 30, 1976, Interlake shipped the entire order to Plexco in Franklin Park, Illinois. Continental at no time had physical possession of the pipe. Plexco coated the pipe pursuant to its separate contract with KPL. KPL purchased other materials, fittings and equipment from other sources, which were used in the pipeline construction. About July 28, 1976, KPL entered into a contract with J & B Construction Company to construct the pipelines in question. KPL furnished J & B all materials used in the construction job. J & B fulfilled its contract and was paid by KPL. J & B had no agreement of any kind with Continental, Interlake or Plexco.

By mid-August, 1976, KPL had paid Continental the full purchase price of the pipe. Continental paid Interlake a total of $150,000 prior to Continental being adjudicated a bankrupt October 22, 1976. Interlake's price for the pipe laid in Meade County is $227,769.98. The parties have agreed that $109,487.31 of the $150,000 payment received by Interlake should be credited against the pipe laid in Meade County (thus Interlake's claim for a mechanic's lien on KPL's Meade County property is for $118,282.67).

The parties agree the pipe delivered in Meade County was used in KPL's gas pipeline project and that there was no verbal or written agreement between KPL and Interlake, except as Inter-

lake may claim an agency relationship between Continental and either KPL or Interlake. The parties also agreed as to the facts concerning the filing of the liens in question, service of notices, filing of the suit and the like and no issue is raised as to these formalities. The parties also have supplied us with information as to what has occurred in a lawsuit brought in Illinois by Interlake against KPL in which Interlake sought to recover possession of certain pipe it had delivered to Plexco pursuant to its agreement with Continental, which pipe was still in Plexco's possession.

The trial court here found that Continental was in effect a contractor and that Interlake was in effect a materialman subcontractor and as such entitled to a mechanic's lien under K.S.A. 55-208. KPL appeals this judgment.

KPL presents an ingenious argument in derogation of the lien adjudication. It predicates basic error in the trial court's determination that Continental was a *contractor* rather than a *materialman*. It would have us determine, from language used in K.S.A. 55-210, and elsewhere, that four separate functional types of persons are afforded protection under our mechanic's lien laws, namely *contractors, subcontractors, materialmen* and *laborers,* and that the status of each, as well as the extent of protection, depends upon his contractual relationship with and distance from the owner of the property which has been improved. We omit some of the steps and arguments in appellant's thesis but its bottom line is that Continental was not a contractor as declared by the court but was only a materialman and Interlake was similarly simply a materialman and that our law provides no lien to a materialman of a materialman.

Rather than dealing in categorizations that could lead to a tyranny of labels regardless of other meaningful criteria, let us look at our statutes and decisions under them (this is an area in which decisions from other jurisdictions are of little or no value because of differences in statutes and also in lack of universality in interpretation).

We have two separate mechanic's lien laws, one, the general law found at K.S.A. 60-1101 *et seq.,* as amended, and the other, dealing specifically with oil and gas properties, being K.S.A. 55-207 *et seq.* We examine both for several reasons: K.S.A. 55-210 does provide that liens for labor and materials furnished to the owner of a leasehold for oil and gas purposes shall be enforced in

the same manner as liens for mechanics and others against real estate; the two sets of statutes should be construed harmoniously; and, although the trial court adjudicated a lien under 55-208 and the parties assert and deny rights thereunder, Interlake also claims entitlement to a lien under the general law.

K.S.A. 60-1101, in effect in 1976, but since amended to extend a measure of protection to an owner of residential property, provided in pertinent part:

"Any person furnishing . . . material, or supplies used or consumed for the improvement of real property, under a contract with the owner or with the . . . agent . . . of the owner, shall have a lien . . . ."

K.S.A. 60-1103 (*a*) provided:

"Any subcontractor or other person furnishing . . . material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, or a subcontractor of the contractor, may obtain a lien . . . ."

Before proceeding further we should note the relationship between the two statutes arising from the language employed. K.S.A. 60-1101 affords a lien for a person furnishing material under a contract with the owner. The word "contractor" is not used. K.S.A. 60-1103 affords protection to a person furnishing material under an agreement with "the contractor" or a subcontractor of "the contractor." We think the phrase "the contractor" in 1103 can only be construed to refer to the one mentioned in 1101 as "any person furnishing . . . material . . . under a contract with the owner."

K.S.A. 55-207, in effect in its present language since 1925, provides:

"Any person . . . who shall under contract, express or implied, with . . . the owner of any gas pipe line . . . or with the . . . agent of such owner, who shall . . . furnish material . . . shall have a lien upon the . . . gas pipe line . . . ."

K.S.A. 55-208, in effect, unamended, since initial enactment in 1909, provides:

"Any person . . . who shall furnish such . . . supplies to a subcontractor under a contractor . . . may obtain a lien upon . . . any gas pipe line . . . ."

KPL acknowledges that K.S.A. 55-208, pursuant to which the trial court acted, affords protection to four classes of persons: 1. A

laborer employed by a contractor; 2. a subcontractor; 3. a materialman of a subcontractor; and 4. a materialman of a contractor. KPL concedes this fourth protection is one afforded judicially in *Mountain Iron & Supply Co. v. Branum,* 200 Kan. 38, 434 P.2d 1015 (1967), but it would narrowly limit that protection to the categorization it chooses to use as heretofore mentioned—reiterating that there is no authority for a lien to a materialman of a materialman.

In urging this narrow construction KPL relies heavily on *Indiana Limestone Co. v. Cuthbert,* 126 Kan. 262, 267 Pac. 983 (1928), for statements it considers significant in distinguishing between the terms "contractor," "subcontractor" and "materialman." There a general contractor undertook construction of a building, including the procurement of all labor and material. A subcontractor undertook the supply of stone called for in the plans. Plaintiff supplied cut stone to the subcontractor who did nothing except procure the stone from plaintiff and deliver it to the site of the building project. The subcontractor did not pay plaintiff. In an action to recover on a bond the crucial determination, made under general mechanic's lien law then in effect, was that plaintiff was a materialman and not a subcontractor and hence was barred from asserting a lien.

The statute under which *Indiana Limestone* was decided was R.S. 1923, 60-1403, which to the extent it was pertinent provided:

"Any person who shall furnish any such material . . . *under a subcontract with the contractor* . . . may obtain a lien . . . ." (Emphasis supplied.)

Thus we see a narrow statute strictly interpreted, a result which has been diluted by statutory amendment. Compare the foregoing with its much broader counterpart in effect when this case arose—K.S.A. 60-1103, under which any person furnishing material used or consumed at the site under an agreement with a subcontractor is protected. The *Indiana Limestone* holding has been diluted judicially as well in decisions under oil and gas lien laws.

In *Meadows v. Oil Co.,* 108 Kan. 228, 194 Pac. 916 (1921), the court held that under the oil and gas lien statutes which are the predecessors of our present K.S.A. 55-207 and -208 that a lien for material will attach to an oil and gas leasehold where the material is furnished to the owner of the lease, to his agent, or to a contractor, for the development or improvement of the lease or

the property used in connection therewith (Syl. ¶ 1 and 2). The foregoing was followed in *Skinner v. Oil Co.*, 112 Kan. 742, 212 Pac. 684 (1923), in *Woodmansee v. Oil and Gas Co.*, 113 Kan. 637, 216 Pac. 276 (1923), and eventually in *Mountain Iron & Supply Co. v. Branum*, 200 Kan. 38. In all these cases little concern was shown for any particularly descriptive label for the lien claimant. For example, in *Mountain Iron* we find these terms in discussion with reference to one type of claimant: "[A] sub-contractor, who furnishes labor or materials to one who has a drilling contract with the owners," Syl. ¶ 1 (*b*); "dealer in oil well supplies," 200 Kan. at 38, 39; "subcontractor," 200 Kan. at 39, 43, 48; "materialman subcontractor," 200 Kan. at 41; "materialman," 200 Kan. at 46; "a laborer who was clearly a subcontractor," 200 Kan. at 44. *Mountain Iron* did grant a lien to one who furnished supplies for another who had a contract relationship with the owner of an oil and gas lease. We are aware of no decision in which loose language has been used in a definitive way so as to affect the substantial rights of the parties.

Our decisions are in harmony with the broad language used in the statutes affording lien protection to those supplying material for a particular project—named in 60-1103 as "any subcontractor *or other person . . .*" and in 55-208 as "*any person*" furnishing supplies to a subcontractor, the scope of the latter being expended by *Mountain Iron* to include a contractor.

Here we think it is of little import whether Continental is called a contractor, subcontractor, materialman or something else. (Nor is it of much consequence that KPL asserts it was its own general contractor. In the Illinois lawsuit in which Interlake sought recovery of the pipe still in Plexco's possession, and this may serve to illustrate a point, KPL claimed Continental was a broker, which is a form of agency, rather than a distributor.) Continental certainly did not act as a distributor—it did not have on hand any pipe used in the project which it had purchased from Interlake prior to entering into its contract with KPL, for which pipe Interlake clearly would not have a lien.

What is important here is that Continental had a contractual relation with KPL to procure certain pipe; Continental entered into an agreement with Interlake, whereby, with KPL's knowledge and at its direction, Interlake delivered the pipe to KPL, in care of KPL's designated pipe-coater in Illinois, thence to be

transported to KPL for use on its property in Meade County, the pipe being so earmarked from the beginning of Continental's transaction with Interlake; and finally the pipe was used on KPL's property, as intended from the beginning by all concerned.

We think the trial court correctly adjudicated a lien under K.S.A. 55-208. We deem it unnecessary to determine appellee's entitlement to a lien under other statutes.

Interlake has cross-appealed from the trial court's denial of prejudgment interest. It concedes the purchase order from Continental did not mention interest but points out that its invoices called for payment within thirty days and further contained a clause stating that the amount of the bill was subject to interest after maturity.

Interlake notes that K.S.A. 84-2-207(2) allows additional terms to be added if there is no material alteration or objection. The official U.C.C. Comment No. 5 to 84-2-207 states:

"5. Examples of clauses which involve no element of unreasonable surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given are  .  .  .   a clause providing for interest on overdue invoices or fixing the seller's standard credit terms where they are within the range of trade practice and do not limit any credit bargained for  .  .  .  ."

The trial court received no evidence as to standard credit terms or trade practices since this matter was not included in the stipulated facts. Kansas common law has allowed recovery of interest on an account once the amount and due date are fixed. In *First National Bank v. Banker's Dispatch Corporation,* 221 Kan. 528, Syl. ¶ 6, 562 P.2d 32 (1977), the court held:

"When an amount is due upon contract, either expressed or implied, and there is no uncertainty as to the amount which is due on the date on which it became due, the creditor is entitled to recover interest from the due date."

Interest may be recovered in a mechanic's lien foreclosure action, *Benner-Williams, Inc. v. Romine,* 200 Kan. 483, 437 P.2d 312 (1968).

Here the claim was liquidated and Interlake was entitled to prejudgment interest, to be calculated as follows: 6% interest from August 30, 1976, to July 1, 1980, and 10% interest from July 1, 1980, the effective date of the statutory change in rate of prejudgment interest (K.S.A. 1980 Supp. 16-201), to August 11, 1980, the date of the judgment.

The judgment is affirmed upon appeal, the cross-appeal is

sustained and the cause is remanded with directions to grant prejudgment interest in accord with the foregoing.

Judgment affirmed as modified and remanded.

ABBOTT, J., dissenting: This case involves the corporate owner of a pipeline easement (KPL) which purchased pipe from a retail supplier (Continental) which in turn obtained the pipe from its supplier (Interlake). In my opinion, this case involves the supplier of a supplier and not the supplier of a contractor or subcontractor.

KPL intended to and did subsequently construct a pipeline in Kansas. In preparation, it ordered the pipe involved in this case from Continental, issuing its verbal order for pipe on April 22, 1976. Continental issued a written order and shipping instructions to Interlake on the same day for pipe. Interlake was to invoice Continental and subsequently made specific and detailed arrangements with Continental as to how and when it was to pay for the pipe. The pipe was shipped in June and July of 1976 to Plexco which had a separate contract with KPL to coat the pipe and reship it to designated points in Kansas ranging from Abilene to Meade. KPL purchased a wide range of material from other sources for use in the construction of the pipeline. KPL awarded a contract the last week of July 1976 to a contractor to construct at least that part of the pipeline involved in this suit. KPL furnished all of the material for the pipeline except welding rod, cadweld, rockshield, wood slat for coating protection and above-ground fence repair materials. The contractor had no contract of any kind with Plexco, Continental or Interlake. Interlake did nothing other than sell the pipe in question to Continental which sold it to KPL.

It is important to note the majority does not rely on Continental's being an agent of KPL. The majority, as I view the opinion, holds that Continental, by virtue of furnishing supplies used on KPL's project, is a contractor or subcontractor and thus Interlake has a lien by virtue of furnishing supplies to a contractor or subcontractor.

If Interlake has a lien, it must be by virtue of K.S.A. 55-207 or 55-208. The general lien statutes (K.S.A. 60-1101 *et seq.)* do not apply to oil and gas leases. 2 Gard's Kansas C. Civ. Proc. 2d Ann. § 60-1101, Comments (1979); *Mountain Iron & Supply Co. v. Branum,* 200 Kan. 38, 41, 434 P.2d 1015 (1967). The general lien

statutes are useful only to the extent they might shed some light on legislative intent in construing K.S.A. 55-207 and 55-208. Oil and gas lien laws are strictly construed against those claiming a lien, and their scope is not to be extended beyond that clearly granted by the legislature. *Gaudreau v. Smith,* 137 Kan. 644, 21 P.2d 330 (1933).

As applied to the facts before us, K.S.A. 55-207 protects any person or entity that contracts with the owner of any gas pipeline. Continental unquestionably would be entitled to a lien pursuant to 55-207, but Interlake would not. The majority does not rely on 55-207, but on 55-208. In order to do so, it must first be determined that Continental is a contractor as contemplated by 55-207. That is the crux of the majority opinion, and where I am unable to agree.

I am forced to concede at the outset that our Supreme Court in construing the general lien statutes has stated that "[a] contractor is one who furnishes labor or materials under a contract direct with the owner for the improvement of property." *Stewart v. Cunningham,* 219 Kan. 374, 377, 548 P.2d 740 (1976). The Supreme Court there, however, was not considering the question before us here and depended upon a broad statement in 57 C.J.S., Mechanics' Liens § 90, as authority for that statement. That definition, in my opinion, cannot be interpreted to control the factual question before us.

I can only assume that when the word "contractor" was used by the legislature in K.S.A. 55-208, it was used in the same sense that it has been defined in other statutes and as courts have generally interpreted it when construing lien statutes.

The definition of contractor and subcontractor in K.S.A. 44-717(*b*)(3) has remained constant through several legislative changes, with the latest version of that statute found in L. 1981, ch. 205, § 3(b)(3). The statute has consistently defined contractor and subcontractor as those persons or entities "engaged in the business of the *construction,* alteration, repairing, dismantling or demolition of buildings, roads, bridges, viaducts, sewers, water and gas mains, streets, disposal plants, water filters, tanks and towers, airports, dams, levees and canals, oil and gas wells, water wells, *pipelines,* and every other type of structure, project, development or improvement coming within the definition of real property." (Emphasis added.) See also K.S.A. 79-1008 and K.S.A.

82a-1203. I am unable to find that the legislature has ever defined a contractor or subcontractor as one who merely supplies materials. The general lien laws in chapter 60 certainly do not include a supplier of material in the terms contractor or subcontractor. To say that the legislature by its enactment of K.S.A. 55-207 and 55-208 intended for a supplier of material to have the status of a contractor is not only totally inconsistent with the general lien laws but with all specific statutory definitions of "contractor."

Case law, legal scholars and authorities such as Black's Law Dictionary have stated that the term "contractor," when strictly defined, is applicable to any person or entity that enters into a contract. In the context of a mechanic's lien statute, however, a supplier is considered neither a contractor nor a subcontractor. 53 Am. Jur. 2d, Mechanics' Liens § 71. Greatly simplified, a contractor or subcontractor must actually construct some part of the improvement. A materialman (supplier) merely furnishes supplies to a contractor to be used in the construction project.

The majority correctly notes that cases from other jurisdictions are generally not persuasive due to fundamental differences in the lien statutes involved. Nevertheless, I find the general rule is that the supplier of a supplier is not entitled to a lien in the absence of a statute clearly expressing legislative intent to extend the lien statute to that supplier. See 57 C.J.S., Mechanics' Liens § 103; 53 Am. Jur. 2d, Mechanics' Liens § 73; Annot., 141 A.L.R. 321.

In *American Buildings Co. v. Wheelers Stores,* 585 P.2d 845 (Wyo. 1978), the Wyoming Supreme Court considered a statute somewhat similar to ours. The court first determined that one who supplies materials but is not involved in construction of the improvement is a materialman within the mechanic's lien laws, not a contractor. The facts of the case are analogous to those before us. Wheelers Stores was expanding into Wyoming and contacted American Buildings directly to purchase prefabricated steel buildings to be used as stores. It was agreed that Wheelers would buy the buildings through American Buildings' Wyoming dealer. The dealer would place the orders with American, American would manufacture the buildings, the buildings would be delivered to Wheelers and Wheelers would arrange for their erection. American would bill its dealer which in turn would bill Wheelers. This arrangement worked until the fifth building was completed. Wheelers paid the dealer—as KPL in this case paid

Continental. The dealer was unable to pay American, and American claimed to be a supplier to a contractor. The Wyoming court noted that American parted with title to the building upon its sale to the dealer, so American was only the supplier to the supplier and not entitled to a lien.

In *City of Evansville v. Verplank Concrete & Supply,* _____ Ind. App. _____, 400 N.E.2d 812 (1980), the Indiana Court of Appeals considered a case where the landowner contracted with Corley Concrete Corporation to purchase preformed and prestressed concrete which Corley was to manufacture according to the architect's specifications. Verplank supplied ready mixed concrete to Corley for use in casting the components. The landowner paid Corley. Corley did not pay Verplank, so Verplank attempted to perfect and foreclose a mechanic's lien. The trial court ordered foreclosure. In reversing the trial court, the Indiana Court of Appeals stated that the trial court erroneously found Corley to be a contractor or subcontractor—that Corley was only a materialman and Verplank as the supplier of a supplier was not entitled to a mechanic's lien. Other cases also hold that the supplier of a supplier is not entitled to a lien in the absence of a statute clearly granting such a lien. See, *e.g., Watson v. Murphey,* 36 Ariz. 377, 285 Pac. 1037 (1930); *Ga.-Pacific Corp. v. Dan Austin Prop. Inc.,* 126 Ga. App. 191, 190 S.E.2d 131, *aff'd* 229 Ga. 803, 194 S.E.2d 472 (1972); *Ronald A. Coco, Inc. v. St. Paul's Methodist Church,* 78 N.M. 97, 428 P.2d 636 (1967).

In my opinion, the majority opinion places a heavy burden on the owner of any leasehold for oil and gas purposes far beyond that contemplated by the legislature and one that as a practical matter is nearly impossible to meet. If the majority is correct, then I am unable to see why KPL would not be required to ensure that Continental paid Interlake and that Interlake paid for the steel used in the pipe, paid its employees and paid for welding rods, etc. Carried to the logical extreme, if KPL purchases a piece of drilling equipment from a retailer (the majority would label the retailer a "contractor"), it would be forced to ensure that the manufacturer (a subcontractor) is paid and that the manufacturer pays its employees *and* its suppliers of component parts. It appears that would be the end result unless the appellate courts are willing to rewrite the statutes by limiting this decision to special orders, or property not held in the regular course of

business, etc. I am not inclined to do so, as in my opinion the legislature did not intend for the term "contractor" as used in K.S.A. 55-208 to include a supplier.

Here we have a supplier claiming protection under the lien laws who did nothing other than sell his product to a retailer who in turn had contracted to sell the pipe to an owner of a leasehold interest who then furnished that product to a contractor who incorporated the product in the construction project. The legislature never intended to protect such a remote supplier. I would reverse the trial court.