No. 29,100.

W. H. SCHWARTZ, *Appellee* and *Cross Appellant,* v. E. H. DUNCAN et al., *Defendants;* THE MOUNTAIN IRON AND SUPPLY COMPANY, *Appellant* and *Cross Appellee.*

(284 Pac. 606.)

Opinion filed February 8, 1930.

*Homer V. Gooing, T. C. Forbes, C. C. Chase, Clay C. Carper,* all of Eureka, *F. S. Jackson, James E. Smith,* both of Topeka, *F. J. Leasure* and *J. M. Pleasant,* both of El Dorado, for the appellees and cross appellants.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff commenced this action to obtain a judgment against E. H. Duncan, the owner of an oil-and-gas lease, for drilling a well on the lease and to foreclose a mechanic's lien filed by him to secure the payment of his claim for drilling the well. The International Supply Company claimed a chattel mortgage on supplies sold by it to E. H. Duncan, to be used in drilling

the well. Each of the other defendants filed cross petitions in which they sought to foreclose mechanics' liens on the property, either for labor performed or for supplies sold to W. H. Schwartz in drilling a well. Judgment was rendered establishing a chattel mortgage in favor of the International Supply Company and giving to that company the possession of all the property sold by it to E. H. Duncan. From that judgment the Mountain Iron Supply Company appealed, and W. H. Schwartz, the A. C. Houston Lumber Company, Black, Sivalls & Bryson, Inc., and Ole G. Evenson are cross appellants.

The facts are disclosed by findings made by the trial court, which, with the conclusions of law, are as follows:

"First. At all times material to this action the defendant E. H. Duncan was the owner of an oil-and-gas mining lease covering the south half of the northwest quarter of section 27, in township 25 south, range 9, in Greenwood county, Kansas.

"Second. That on the 21st day of June, 1924, the defendant, Duncan, as the owner of said lease, entered into a written contract with the plaintiff whereby it was agreed, in substance, that the plaintiff would drill a well for oil and gas on the above-described real estate, the plaintiff to furnish the drilling tools and machinery and the necessary labor, including underreaming, and to complete said well to a depth of 2,350 feet, unless oil or gas were found at a lesser depth, and after drilling said well to the top of the sand the plaintiff agreed to drill into the sand, clean out the well and pull the casing for $75 per day of 24 hours. Said Duncan, by the terms of said agreement, agreed in substance to furnish the drilling rig complete and all necessary casing, water and fuel for the drilling and casing of said well. Work was to commence promptly on said well and the defendant agreed to pay the plaintiff as compensation, when said well was completed, the sum of $2,500 cash and to assign to the plaintiff an undivided one-fourth interest in the well and in the 80-acre lease on which it was located. A copy of said contract has been offered in evidence and is attached to plaintiff's petition.

"Third. The plaintiff commenced the work of drilling said well about June 28, 1924, and completed the same to the depth of 2,350 feet about August 8, 1924, and said well was abandoned about August 15, 1924. No oil or gas was ever found in said well.

"Fourth. That on or about the 9th day of August, 1924, and after the well had been drilled to 2,350 feet, the plaintiff and said E. H. Duncan entered into an oral agreement whereby it was agreed that the plaintiff should continue his work on said well and drill the same deeper for the agreed compensation of $60 per day. That thereafter the plaintiff used his drilling tools and machinery and furnished labor on said well as follows: One-half day on August 9, 1924, and two full days on August 11 and 12, when said well was abandoned.

"Fifth. The defendant Duncan never executed or delivered to the plaintiff any assignment of any interest in said oil-and-gas lease, and no demand

therefor was ever made. That there is due and owing to the plaintiff from the defendant E. H. Duncan, under the written contract for the drilling of said well, the sum of $2,500, with interest thereon at the rate of 6 per cent per annum from August 8, 1924, and he is entitled to the assignment of said one-fourth interest in said lease, and there is due and owing to the plaintiff from the said E. H. Duncan, under said oral contract for the drilling of said well deeper, the sum of $150, with interest thereon at the rate of 6 per cent from the 18th day of August, 1924.

"Sixth. On the 18th day of August, 1924, the plaintiff filed his mechanic's lien, claiming a lien on the leasehold, the derrick, casing, tanks, supplies and other materials situated thereon, to secure the amount claimed by him to be due under said written contract, and on the same day he filed a similar lien to secure the amount claimed to be due him under said oral contract.

"Seventh. About June 30, 1924, and while Duncan was the owner of said oil lease, he entered into a verbal contract with the International Supply Company whereby it was agreed, in substance, that the said supply company would sell and deliver to said Duncan such casing and other oil-well material and supplies as might be needed or required in the drilling of said well, and it was then further orally agreed that said supply company should have a lien on said property so furnished to secure the payment of the purchase price, and that as soon as it was ascertained how much casing and other supplies and materials would be needed that said Duncan would execute his note in a sum equal to the purchase price of such casing and materials as might be delivered to said Duncan, and that the said Duncan should also then execute a chattel mortgage to the supply company to secure the payment of said indebtedness.

"Eighth. Shortly after the making of said oral agreement the International Supply Company commenced the furnishing of casing and other materials which were delivered on the leasehold and used in the drilling of said well. Said casing and other materials so furnished were furnished by the supply company from time to time as they were needed in the drilling of the well. The first of said casing and other materials were delivered to Duncan about June 30, 1924, and the last was delivered to him on August 13, 1924. The agreed purchase price of said casing and other materials so delivered was the sum of $12,380.72.

"Ninth. On August 14, 1924, being the day after the last material was delivered, said Duncan, in compliance with his oral agreement with the supply company, executed his promissory note to said company for $12,380.72, due thirty days after date, and on the same date said Duncan, to secure the payment of said indebtedness, executed a chattel mortgage to the supply company whereby said Duncan mortgaged to the supply company each and all of the casing and all the materials and supplies and other equipment that had been delivered by the supply company to said Duncan for use in said well under said oral agreement.

"Tenth. The chattel mortgage executed by Duncan was properly recorded in Butler county on August 14, 1924, and in Greenwood county on August 20, 1924. At the time Duncan made the oral agreement with the supply com-

pany that it should have a lien on said casing and other materials and at the time said chattel mortgage was executed said Duncan was a resident of Butler county. After said well was abandoned the supply company, under its mortgage, took possession of and removed and sold all the supplies and materials furnished by it that they were able to obtain, and pulled from the well and sold the casing it furnished. At the time it took possession of said property its fair market value was much less than the amount due it from Duncan and secured by said mortgage, said property then being of the market value of $7,867.63.

"Eleventh. L. L. Bennett and Dave Abels, partners doing business under the firm name of Western Pipe and Supply Company, about August 5, 1924, sold and delivered to said Duncan certain line pipe and tubing to be used in the drilling of said well at the agreed price of $509.89, and which materials were used in the drilling of said well. At the time of the sale of said materials to Duncan, and as a part of the purchase agreement, said Duncan, under date of August 5, 1924, executed and delivered to the Western Pipe and Supply Company his note for $509.89, due thirty days after date, and to secure said indebtedness and as a further part of the sale agreement said Duncan executed and delivered to said payee a chattel mortgage dated August 5, 1924, covering said materials.

"Twelfth. Said chattel mortgage to the Western Pipe and Supply Company was recorded in Greenwood county on August 19, 1924. At the time of the execution of said mortgage said Duncan was a resident of Butler county, but the property covered by said mortgage was then located in Greenwood county. That Bennett and Abels, after the well was abandoned, took possession of and removed, under their mortgage, all the tubing and line pipe furnished by them, and at the time they took such possession of said property its fair market value was less than the amount due them from Duncan and secured by said mortgage.

"Thirteenth. The Mountain Iron and Supply Company, a corporation, on July 16, 1924, under an oral contract with said Duncan, sold and delivered to him certain casing at the agreed price of $597.63, which casing was used in the drilling of said well, and was furnished to said Duncan on July 16, 1924. There is due the Mountain Iron and Supply Company from E. H. Duncan for such casing $597.63, with interest thereon at 6 per cent from July 16, 1924. On November 11, 1924, said supply company filed its lien with the clerk of this court. The court finds that some one without authority, and other than any party to this suit, removed said casing furnished by said supply company from the lease. The name of the person who removed it and its present location are not shown by the evidence.

"Fourteenth. A. F. Smith, under a verbal contract with W. H. Schwartz, performed labor on said well in running and pulling casing. That he worked at divers dates from the 16th day of July, 1924, until the 8th day of August, 1924, and there became due him from the plaintiff Schwartz for his services the sum of $170, with interest thereon at the rate of 6 per cent from August 8, 1924.

"Fifteenth. That said Smith, within four months from the time he last performed said labor on said well, filed a mechanic's lien with the clerk of this

court. The plaintiff has paid to said Smith the full amount of his claim and has taken an assignment thereof, together with an assignment of said mechanic's lien.

"Sixteenth. Ole G. Evenson, under an oral contract with the defendant Duncan, performed labor in connection with the drilling of said well in that from July 9, 1924, to July 31, 1924, he pumped water and from August 1, 1924, to August 14, 1924, he pumped water and performed services, all of which were in drilling of said well, and that the fair and reasonable value of the services performed by him is the sum of $77.

"Seventeenth. That within four months from the performing of the last labor said Evenson filed his 'mechanic's lien with the clerk of this court. There is due and owing from the defendant Duncan to said Evenson the sum of $77, with interest thereon from August 14, 1924, at the rate of 6 per cent per annum.

"Eighteenth. The A. C. Houston Lumber Company, a corporation, about June 18, 1924, entered into an oral contract with said Duncan for the sale and delivery to Duncan of certain rig timbers, lumber and building material to be used and which were used in the construction of a derrick and other structures on said lease for the drilling of said well. Between June 18, 1924, and the 6th day of August, 1924, both dates inclusive, said lumber company delivered to Duncan on said lease said rig timbers and other lumber for which Duncan orally agreed to pay the sum of $1,363.36.

"Nineteenth. On October 20, 1924, the lumber company filed its mechanic's lien with the clerk of this court. No part of said indebtedness has been paid, and there is due and owing from Duncan to said lumber company, $1,363.36, with interest thereon from August 6, 1924.

"Twentieth. Black, Sivalls & Bryson, a corporation, about June 30, 1924, and on July 21, 1924, entered into oral agreements with said Duncan whereby it sold and delivered to Duncan certain tanks and equipment to be used and which were in fact used on said leasehold in the drilling of said well, for which said Duncan orally agreed to pay the sum of $821.55.

"Twenty-first. That on the 26th day of October, 1924, Black, Sivalls & Bryson, to secure the payment of said claim, filed its mechanic's lien with the clerk of this court.

"Twenty-second. That thereafter Black, Sivalls & Bryson commenced an action in this court against E. H. Duncan et al., to foreclose said lien, and thereafter said action was consolidated and tried with this action.

"Twenty-third. That there is due and owing from E. H. Duncan to Black, Sivalls & Bryson the sum of $821.55, with interest thereon from July 21, 1924, at 6 per cent per annum, but Black, Sivalls & Bryson later took into their possession the tanks and other equipment sold to Duncan, and the court finds that Black, Sivalls & Bryson should be charged with having received $375 as the proceeds of property that is subject to the mechanics' liens as herein found. Said credit of $375 should be made as of May 30, 1925.

"Twenty-fourth. At all times material to this controversy the defendant Duncan was the owner of the oil-and-gas leasehold in question, subject, however, to such rights as the plaintiff acquired to a one-fourth interest therein under their written contract of June 21, 1924. All of the mechanics' liens were

filed in proper time. None of the other parties to this action have filed any answer or other pleadings, and they are now all in default.

"Twenty-fifth. About April 8, 1925, by an agreement of all the parties, the A. C. Houston Lumber Company sold and disposed of the derrick on said lease for the sum of $750, and said sum is now in the hands of the clerk of the district court to abide the judgment of the court and to stand in lieu of said derrick. The amount received for said derrick was a fair and reasonable price and the sale of said derrick is approved by the court.

"Twenty-sixth. Black, Sivalls & Bryson took possession of and disposed of the tanks and other equipment as described in its mechanic's lien after said well had been abandoned. The proceeds from said tanks were retained by it and applied on its claim. When Black, Sivalls & Bryson took possession of said tanks and other equipment furnished by it they were erected on the lease and before they could be disposed of it was necessary to remove them from the lease and to pay the expense of hauling and other expenses in preparing said tanks for sale, and the court finds that the fair market value of said tanks and other materials so furnished by Black, Sivalls & Bryson at the time it received them was $375.

"Twenty-seventh. With reference to the first cause of action of the defendant, the International Supply Company, to foreclose a chattel mortgage on a string of drilling tools and other drilling materials and supplies, more fully described in said chattel mortgage, the court finds that at the time of the trial of this action the plaintiff was not in default, and the indebtedness evidenced by said note and mortgage securing it was not then due by reason of a certain written supplemental contract entered into between the supply company and the plaintiff, and that at the time of the trial of this action the supply company was not entitled to a foreclosure of said mortgage, and that the first cause of action of the supply company should be dismissed without prejudice.

"Twenty-eighth. There is due and owing from the defendants E. H. Duncan, Dave Hurd, Roy M. Kincade and Ed Marcum the sum of $4,513.09, with 6 per cent interest thereon from August 14, 1924, to the International Supply Company.

"CONCLUSIONS OF LAW.

"First. The plaintiff is entitled to recover a judgment against the defendant E. H. Duncan for $2,500, with interest thereon at 6 per cent per annum from August 8, 1924, and is also entitled to recover a judgment against said Duncan for the further sum of $150, with interest thereon at 6 per cent from August 18, 1924, together with the costs of this action, and is further entitled to a judgment that as between him and Duncan he is the owner of an undivided one-fourth interest in said oil-and-gas lease and is entitled to a proper assignment of said interest from said Duncan.

"Second. To secure the payment of the sums found due him, the plaintiff is entitled to liens upon the derrick, the tanks, the leasehold, and all the equipment and appurtenances used thereon in the drilling for oil and gas, except such casing and other implements, tools and equipment as are described in the two chattel mortgages referred to in findings of fact, and he is entitled to a foreclosure of his mechanics' liens.

"Third. All of the casing and other materials delivered to Duncan onto said lease by the International Supply Company came upon the lease subject to an oral chattel mortgage from Duncan to the supply company to secure the payment of the purchase price of said casing and other materials, and the legal title to said casing and other materials at all times has remained in the supply company, and said property has been subject to said chattel mortgage. That said oral chattel mortgage and said written chattel mortgage thereafter executed were legal and valid, and that by reason thereof the International Supply Company has a first and prior lien upon all of the casing and other materials so furnished and delivered by it to said Duncan and described in said written chattel mortgage, and no other lien claimant has any lien or claim to said mortgaged property, and said supply company is entitled to the possession thereof.

"Fourth. When the line pipe and tubing furnished by L. L. Bennett and Dave Abels to Duncan came upon or was used in connection with the drilling operations on said leasehold, it was subject to the chattel mortgage executed by Duncan to them, and they have a first and prior lien upon said line pipe and tubing under and by virtue of their chattel mortgage, and no other lien claimant has any lien or claim thereon and Bennett and Abels are entitled to the possession of said property.

"Fifth. The Mountain Iron and Supply Company is entitled to a judgment against Duncan for $597.63, with interest thereon at 6 per cent from July 16, 1924. The mechanic's lien filed by it is valid and subject to foreclosure, and said supply company has a first and prior lien on said leasehold, and the other materials, supplies and appurtenances used thereon that are by the court found to be subject to mechanics' liens. The lien of said supply company is coordinate with the other mechanics' liens herein allowed.

"Sixth. Under the written contract between the plaintiff and said Duncan the said plaintiff obligated himself to pay for the running and pulling of casing as set forth in the answer and cross petition of A. F. Smith. Said Smith has received payment for his services from the plaintiff and is entitled to recover nothing in this action. The plaintiff is not entitled to be subrogated to the rights of Smith under his mechanic's lien, and the plaintiff is entitled to recover nothing on the claim or lien of said Smith.

"Seventh. Ole G. Evenson is entitled to recover judgment against Duncan for $77, with interest thereon at 6 per cent from August 14, 1924. The mechanic's lien filed by him is valid, subject to foreclosure, and that he has a first and prior lien on said leasehold, and the other materials, supplies, and appurtenances used thereon that are by the court found to be subject to mechanics' liens. His lien is coördinate with the other mechanics' liens herein allowed.

"Eighth. The A. C. Houston Lumber Company is entitled to a judgment against Duncan for $1,363.36, with interest thereon from August 6, 1924, at 6 per cent per annum. Its mechanic's lien is valid and subject to foreclosure, and it has a first and prior lien on said leasehold and the other materials, supplies and appurtenances used thereon that are by the court found to be subject to mechanics' liens. The lien of said lumber company is coördinate with the other mechanics' liens herein allowed.

"Ninth. Black, Sivalls & Bryson is entitled to a judgment against Duncan for $821.55, with interest thereon from July 21, 1924, at 6 per cent per annum. The mechanic's lien filed by it is valid and subject to foreclosure, and it has a first and prior lien on said leasehold and the other materials, supplies and appurtenances used thereon that are by the court found to be subject to mechanics' liens. Its lien is coördinate with the other mechanics' liens herein allowed, but it should pay into court said $375, less its prorate share of all the funds subject to distribution.

"Tenth. The mechanics' liens herein allowed shall attach to the $750 now in the hands of the clerk as the proceeds from the sale of said derrick, and shall also attach to the $375, being the value of the tanks and now in the hands of Black, Sivalls & Bryson. None of the mechanics' liens shall attach to the drilling tools, engine, boiler and other equipment, tools or machinery furnished by the plaintiff and used in the drilling of said well.

"Eleventh. The first cause of action of the International Supply Company should be dismissed without prejudice.

"Twelfth. The International Supply Company is entitled to a judgment against E. H. Duncan, Dave Hurd, Roy M. Kincaid and Ed Marcum for $4,513.09, with 6 per cent interest from August 14, 1924, together with the costs of this action."

The findings of fact disclose that the contract between Duncan, the owner of the oil-and-gas lease, and the plaintiff was made on June 21, 1924. Work on the well was commenced June 28, 1924. The well was drilled to a depth of 2,350 feet on August 8, 1924, and was abandoned on August 15, 1924. The contract between the International Supply Company and E. H. Duncan was made on June 30, 1924. The first casing and other material was delivered to Duncan under that contract on June 30, 1924, and the last on August 13, 1924. On August 14, 1924, a written chattel mortgage was given by Duncan to the International Supply Company to secure the payment of a promissory note that was then given to the company for supplies sold by it to Duncan. That chattel mortgage was recorded in Butler county on August 14, 1924, and in Greenwood county on August 20, 1924. The plaintiff filed his mechanic's lien on August 18, 1924.

Was the chattel mortgage given by Duncan to the International Supply Company a lien prior to the mechanics' liens filed by others who had furnished materials for the well or who had performed labor thereon?

The abstract contains the following:

"By Mr. McKay: I want to ask you a question, Mr. Leasure, to get it into the record. When did you file your chattel mortgage?

"By Mr. Leasure: On the 14th day of August, 1924.

"By Mr. Forbes: Filed of record?

"By Mr. Leasure: Yes. The evidence will show that Duncan, Marcum, Hurd and Kincaid all reside in El Dorado, in Butler county.

"The Court: The International makes no claim that the other lienholders had actual knowledge or anything of the mortgage other than the knowledge given by the record?

"By Mr. Leasure: No. I think not.

"By Mr. Forbes: The mortgage was also filed in this county?

"By Mr. Leasure: I think so."

These statements were made by F. J. Leasure, counsel for the International Supply Company, during his opening statement to the jury.

As between the International Supply Company and E. H. Duncan, the verbal chattel mortgage was good. (*Bank v. Taylor*, 69 Kan. 28, 37, 76 Pac. 425; *Bank v. Jelf*, 86 Kan. 41, 43, 119 Pac. 538; *Bank v. Abbott*, 104 Kan. 344, 346, 179 Pac. 326.) Was it good as against lawful lienholders who acquired the right to liens before the written chattel mortgage was given or recorded?

Section 1 of chapter 197 of the Laws of 1925, in part, reads:

"Any person, corporation or copartnership who shall under contract . . . with the owner of any leasehold for oil-and-gas purposes . . . perform labor or furnish material, machinery and oil-well supplies used in the digging, drilling . . . of any oil or gas well, or who shall furnish any oil-well supplies or perform any labor in constructing . . . in drilling . . . of any gas well, shall have a lien upon the whole of such leasehold, or oil-pipe line or gas-pipe line, or lease for oil-and-gas purposes, the building and appurtenances, and upon the material and supplies so furnished, and upon said oil-and-gas well for which they were furnished . . . upon the leasehold for which said material and supplies were furnished and labor performed . . . Such lien shall be preferred to all other liens, or incumbrances which may attach to or upon such leasehold for gas-and-oil purposes . . . subsequent to the commencement of or the furnishing or putting up of any such machinery or supplies. . . ."

In *Williams v. Otstot Oil Co.*, 129 Kan. 210, this court declared that—

"When the owner of an oil-and-gas lease contracts with some one to drill a well thereon and agrees to furnish certain equipment and supplies, including casing, the mechanics' liens provided by R. S. 55-207 for the driller, laborers, or materialmen, attach to the material, supplies and casing furnished by the owner of the lease without regard to whether he owns such material, or whether he has borrowed it, or rented it."

See, also, *Skinner v. Oil Co.*, 112 Kan. 742, 212 Pac. 684.

Section 58-301 of the Revised Statutes reads:

"Every mortgage or conveyance intended to operate as a mortgage of personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds of the county in which the mortgagor resides, if the mortgagor be a resident of this state; but if the mortgagor does not reside in this state then the mortgage shall be recorded in the county in which the mortgaged property is situated at the time the mortgage is executed."

This court said in *Campbell v. Killion*, 124 Kan. 124, 257 Pac. 752, that—

"The term 'creditors of the mortgagor,' as used in R. S. 58-301, does not mean general creditors, but only includes those who have specific liens upon, or rights to, the mortgaged property."

See, also, *Youngberg v. Walsh*, 72 Kan. 220, 83 Pac. 972; *Geiser v. Murray*, 84 Kan. 450, 455, 114 Pac. 1046; *Bank v. Walters*, 92 Kan. 391, 393, 140 Pac. 864.

Under the statute, those who furnished material for and performed labor on the well were creditors who had the right to a lien. They were not mere general creditors; they were creditors who had the right to look to the property as security for the payment of what was or would be due them. Their rights were superior to those of the International Supply Company under the chattel mortgage.

The judgment giving to the International Supply Company possession of the property sold by that company to E. H. Duncan is reversed, and the trial court is directed to enter judgment in accordance with this opinion.