No. 26,735.

H. R. BITTENBENDER, *Appellee*, v. A. J. FISHER et al., *Appellees*, and GABRIEL FRANK, *Appellant*.

SYLLABUS BY THE COURT.

MECHANICS' LIENS—*Material Furnished for Operation of Oil and Gas Lease— Property Affected.* The owner of an oil and gas lease contracted for the drilling of a well, the contractor to receive money and other compensation, including a half interest in the lease from the time he spudded in a well. The contractor drilled a well which proved a dry hole. One who had sold him material filed a lien in time to be valid if his sale was to the owner, but too late if to a contractor. The lien statement purported to reach only appliances, etc., then on the lease. It is held that it did not attach to casing afterwards lent by the owner to the contractor to enable him to carry on his work and used for that purpose.

Appeal from Morris district court; CASSIUS M. CLARK, judge. Opinion filed July 10, 1926. Affirmed.

*Harry E. Snyder*, of Council Grove, for the appellant.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson* and *William H. Hitchcock*, all of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Oil Well Supply Company, a defendant in an action, obtained a judgment for the enforcement of a lien upon an oil and gas lease and its appurtenances, owned by H. N. Roberts and E. N. McGregor. The rights of the company passed by assignment to Gabriel Frank. The judgment was set aside and the issue between Frank on the one hand and Roberts and McGregor on the other was tried out, resulting in a judgment against the lien claimant, from which this appeal is taken. Objection is made to the vacation of the judgment, but the order setting it aside was justified by an inadvertence which had prevented a full hearing, and the whole matter was thereafter determined on its merits. The controversy is as to the validity of the lien.

For convenience the appellant will be spoken of as the plaintiff and the appellees as the defendants, these terms indicating their relation toward each other. The lien is claimed for material sold by the plaintiff to one A. J. Fisher, who was drilling a well upon a lease owned by the defendants under an arrangement embodied in a writ-

Mines and Minerals, 40 C. J. pp. 1171 n. 82, 1175 n. 28.

ten contract. The lien is asserted against some casing furnished by the defendants to Fisher and used in the well, which, however, turned out to be dry, the casing being withdrawn. The lien statement was filed March 22, 1923, seventy days after the last item of material was·furnished. The defendants urge that this was too late. The present statute, which became effective December 27, 1923, allows statements for liens on oil and gas leases to be filed within four months after the furnishing of the last item. (R. S. 55-209.) When the transaction referred to took place, however, the statute concerning liens on oil and gas leases (Laws 1909, ch. 159, § 3) referred to the mechanic's lien law for the rule fixing the time of filing statements, and it allows four months where the material was furnished to the owner (R. S. 60-1402), but only sixty days where it was furnished to the contractor (R. S. 60-1403). The filing in the present case was therefore too late if the relation of the defendants and Fisher is to be treated as that between an owner and contractor. The plaintiff contends that this is not the case, that if the defendants and Fisher were not partners they were at least engaged in a joint venture on such terms that their interests were identical and material sold to Fisher was lienable on that account.

The contract between the defendants and Fisher was in writing. It contained these provisions: Fisher agreed to drill to a depth of 3,000 feet, and if paying oil or gas was found, to drill through the sand and equip the well at his own cost except that the expense of material required should be shared equally between the defendants on the one hand and Fisher on the other. If a forty-barrel well were produced, the casing used in connection with it was to belong to the parties in the same proportion; if the production were less, the casing necessary for the operation of the well was to remain in the well as joint property. Fisher was to have complete management of the well until its completion. Thereafter the management of this well and others on the same quarter section was to be joint. If the well proved dry, Fisher was to plug it and was entitled to the salvage. Fisher was to receive $4,000 from the defendants in four installments at stated depths. As soon as he had spudded in a well a number of leases were to be assigned to him (and were so assigned), including a half interest in the lease on which the well already referred to was to be drilled and was drilled.

We think the contract was one by which Fisher was to drill a well

on a lease owned by the defendants, receiving as compensation therefor various enumerated benefits. The circumstance that the payment was to be made in something besides money does not alter the substantial character of the contract or the relation of the parties. The clauses regarding the effects of a producing well being drilled never operated to change conditions because only a dry hole resulted. However, Fisher was to receive and did receive, before the plaintiff furnished him the material, an assignment of a half interest in the very lease on which the well in question was being drilled. This altered his relation to the lease, and it would seem that his interest at all events should be subject to a lien.

The right of the plaintiff to a lien on the casing in controversy is affected by another consideration. The lien statement was filed as already stated March 22, 1923. It alleged that the plaintiff claimed a lien upon the lease, and upon appurtenances, fixtures, appliances, etc., "which are now upon said land or which have been thereon at any time since the 23d day of December, 1922." About this time Fisher had found himself unable to carry out his contract and the defendants furnished him the casing in controversy as a loan to enable him to carry on the work. If a producing well had resulted, requiring the retention of the casing, it might be regarded as having become a permanent part of the lease, subject to the preëxisting materialman's lien, just as permanent improvements on real estate would inure to the benefit of the holder of an existing mortgage as an addition to his security. But this well never became anything but a dry hole. The use of the casing was a mere temporary expedient and never became anything more. If it had been in use when the lien statement was filed it would have been subject thereto under the liberal provisions of the statute extending such liens to equipment of various sorts. (*Skinner v. Oil Co.*, 112 Kan. 742, 212 Pac. 684.) But having been brought upon the lease after the accrual of a lien which only purported to cover property already there, we think the trial court committed no error in holding it free from the plaintiff's claim. Circumstances not here detailed were brought out justifying a conclusion that the decision was in accordance with substantial justice.

The judgment is affirmed.