No. 44,818

MOUNTAIN IRON & SUPPLY COMPANY, *Appellant*, v. JOE BRANUM, d/b/a TERRELL DRILLING & PRODUCING; KIM OIL COMPANY, INC.; RICHARD M. DRISCOLL; R. M. DRISCOLL; COLLETTE M. DRISCOLL; JERRY J. DRISCOLL; F. J. SPURGEON; VERA HAMMOND; VERA MAY HAMMOND; CHARLES C. HAMMOND; DOROTHA L. HAMMOND; HENRY KAHRS; HELENA A. KAHRS; CLARK E. HAMMOND; ALFRED MOLLENKAMP, *Appellees*.

(434 P. 2d 1015)

Opinion filed December 9, 1967.

*Richard W. Stavely*, of Wichita, argued the cause, and *Clifford R. Holland, Jr., Marvin E. Thompson, George W. Holland* and *Mark Arthur, Jr.*, all of Russell, were with him on the brief for the appellant.

*Richard M. Driscoll*, of Russell, argued the cause, and *Jerry J. Driscoll, John C. Woelk* and *Rex Culley*, all of Russell, were with him on the brief for the appellees.

*Verne M. Laing, Ferd E. Evans, Jr., Ralph R. Brock, Joseph W. Kennedy, C. Robert Bell* and *Robert L. Driscoll*, all of Wichita, were on the brief for Petroleum Equipment Suppliers Association, *amici curiae*.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to foreclose an oil and gas mechanic's lien brought by a dealer in oil well supplies against

the driller and owners of the working interest in an oil and gas lease. The district court sustained a motion for summary judgment on the ground that the dealer in oil well supplies failed to file its mechanic's lien statement within sixty days after last furnishing oil well supplies and equipment to the drilling contractor, and for failing to give notice of the filing of its mechanic's lien statement to the owners of the oil and gas leasehold.

Appeal has been duly perfected presenting the following questions for review:

(1) Is a subcontractor who furnishes lienable items to a contractor for use in the drilling of an oil well entitled to file its mechanic's lien statement within four months from the date such items were last furnished, as provided in the oil and gas lien law (K. S. A. 55-209), or must such subcontractor file his mechanic's lien statement within sixty days from the date such items were last furnished under the mechanic's lien law (K. S. A. 60-1103)?

(2) Does a subcontractor who furnishes lienable items to a contractor for use in the drilling of an oil well obtain a valid lien on the oil and gas leasehold by the timely filing of his mechanic's lien statement *without giving notice thereof* to the owners of such leasehold (K. S. A. 55-209), or is such subcontractor required to give notice of the filing of the mechanic's lien statement to the owners of the oil and gas leasehold as provided in the general mechanic's lien law (K. S. A. 60-1103)?

(3) Did the district court err in holding the dealer in oil well supplies to be a subcontractor?

The first two questions above pertain to the construction of the oil and gas mechanic's lien statutes, and the third relates to the matters before the district court upon which it made a finding of fact.

The action was commenced by Mountain Iron & Supply Company (plaintiff-appellant) against Joe Branum, d/b/a Terrell Drilling & Producing, et al., praying for judgment against Branum in the sum of $837.05 and interest. Plaintiff requested that its mechanic's lien be decreed to be a first and prior lien upon an oil and gas lease covering certain described land in Russell County. All of the defendants, except Branum and Alfred Mollenkamp, own an undivided working interest in the oil and gas lease covering the subject real estate. Branum and Mollenkamp own no working interest, and have no other interest in the oil and gas lease covering the

subject real estate, and have never owned any such interest. Branum defaulted in the district court and is not involved in the instant appeal.

The record before the district court upon which it sustained the motion for summary judgment consisted of a true and correct copy of the petition, the mechanic's lien statement, the answer and counterclaim of the defendant, Kim Oil Company, Inc., the written drilling contract between Kim Oil Company and Branum, and the affidavits of Joe Branum, Guy Manning and Richard M. Driscoll, the latter two being the production superintendent and president of Kim Oil Company, Inc., respectively.

Subsequently the defendants, except Branum and Mollenkamp, filed a motion for summary judgment presenting the issues heretofore stated.

On the 1st day of July, 1966, the trial court after considering the matter made its findings, rulings and judgment as follows:

"1. The defendant, Joe Branum d/b/a Terrell Drilling and Producing, in drilling test hole for oil and gas on the oil and gas lease described in the pleadings was an independent contractor under contract with Kim Oil Company, Inc., operator and one of the owners of the oil and gas lease.

"2. The defendant, Joe Branum, was not one of the owners of the oil and gas lease. The petition in Count No. 2, Paragraph 'C' also admits this.

"3. The plaintiff, Mountain Iron and Supply Company, in furnishing supplies and material to defendant Joe Branum during the drilling operations was under contract with Joe Branum, not the owners, and therefore was a subcontractor under the mechanics lien statutes.

"4. As a subcontractor, the plaintiff Mountain Iron and Supply Company, to perfect and enforce its lien against the defendant owners, was required to comply with the provisions of K. S. A. 55-208, 55-210 and 60-1103. See *Marion Machine Co. v. Allen*, 119 Kan. 770, 241 Pac. 450.

"5. The record shows the plaintiff did not comply with the provisions of K. S. A. 60-1103 & 55-210 in two essential particulars:

"(*a*) The lien statement was not filed within 60 days after the material was last furnished by plaintiff. (The petition alleges the filing two days short of four months after the last material furnished.)

"(*b*) The plaintiff (claimant) did not mail a copy of the lien statement by registered or certified mail or other wise, to the owner of the property, that is owner of the oil and gas lease, nor did plaintiff post a copy of the lien statement in lieu of mailing.

•  •  •  •  •  •  •  •  •  •  •  •  •

"6. Since an action to establish and foreclose a mechanics lien is statutory, and since the plaintiff has failed to comply with essential statutory provisions for such an action, the court finds that summary judgment should be entered against the plaintiff in favor of all defendants except defendant Joe Branum."

The trial court entered judgment upon the foregoing findings in

favor of all defendants except the defendant Joe Branum, d/b/a Terrell Drilling & Producing.

Oil and gas mechanic's liens are created and governed by the provisions of K. S. A. 55-207 to 55-210, inclusive.

Section 1 of the oil and gas lien law (K. S. A. 55-207), originally enacted by the legislature in 1909, provides, insofar as pertinent to this case, that any person who performs labor or furnishes material or oil well supplies under contract with the owner of any oil and gas leasehold, or his agent or trustee, for labor or materials used in the drilling of an oil well, shall have a lien upon the whole of the oil and gas leasehold estate. The proviso, added in 1925, specifies that the performing of labor or the furnishing of materials, whether done under a single contract or a series of contracts shall be considered a single transaction, "unless a period of more than four months elapses between the dates of performing such labor or furnishing such material, machinery or oil or gas well supplies." This section then provides for the priority of the lien created over all other liens which attach "subsequent to the commencement of or the furnishing or putting up of any such machinery or supplies."

Section 2 of the oil and gas lien law (K. S. A. 55-208) has not been changed since its original enactment in 1909 by the legislature. This section provides a lien for one who furnishes machinery or supplies to a subcontractor under a contractor, or to one who performs labor under a subcontractor with a contractor, or to one who performs labor in the employ of a contractor in the same manner and to the same extent as the original contractor for the amount due him as provided in K. S. A. 55-207. Despite the omission in the statute of reference to the lien of the materialman *subcontractor*, the decisions of this court have construed this section to include a lien for the materialman subcontractor. (See, *Woodmansee v. Oil and Gas Co.*, 113 Kan. 637, 216 Pac. 276; and *Meadows v. Oil Co.*, 108 Kan. 228, 194 Pac. 916.)

Section 3 of the original lien law of 1909 (L. 1909, ch. 159, § 3) provides as follows:

"The *liens* herein created [1] shall be *enforced* in the same manner, and [2] *notice of the same* shall be given in the same manner, and [3] the material man's statement or the lien of any laborer herein mentioned shall be *filed* in the same manner as provided for in sections 2 and 3 of chapter 168, Session Laws of Kansas for the year 1899, and all actions brought for the purpose of enforcing any such liens shall be governed by article 27, chapter 80 of

procedure civil, as provided in the General Laws of Kansas for the year 1901." (Emphasis added.)

For purposes of convenience and clarity in further discussion, the various provisions of section 3 above have been separated by inserting the numbers 1, 2 and 3 in brackets in the statute.

The references in section 3 above referred to the then existing mechanic's lien law which provided that a subcontractor must file his lien statement within sixty days after the date material and equipment were last furnished. There is no question but that under the oil and gas lien law as it existed prior to 1923, that a subcontractor was required to file his lien statement within the sixty-day period in order to obtain a valid lien on an oil and gas leasehold.

However, in the 1923 revision, Section 3, above quoted, was repealed and in lieu thereof two new sections were enacted. The first of these sections, K. S. A. 55-209, reads:

"Any person claiming a lien, for labor or materials or both, furnished to owners of leaseholds for oil and gas purposes, as may be provided by law, shall *file* in the office of the clerk of the district court of the county in which the land and leasehold is situated, *a statement* setting forth the amount claimed an[d] the items thereof, as nearly as practicable, the name of the owner of the land, the name of the owner of the leasehold, the name of the contractor, the name of the claimant and a description of the property subject to the lien, whether personal or real or both, verified by affidavit: *Provided,* That if any promissory note bearing a lawful rate of interest shall have been taken for such labor or material, it shall not be necessary *to file* an itemized statement of labor or material furnished, but in lieu thereof it shall be sufficient *to file* a copy of such note, with a sworn statement that said note or any part thereof, was given for such labor or material furnished said leaseholder or contractor, on said leasehold.

"Such *statement shall be filed within four months after the date upon which material was last furnished or labor last performed under contract as aforesaid.* Immediately upon the receipt of such statement the clerk of the district court shall enter a record of the same in a book kept for that purpose, the same as is provided by law, in case of liens against real estate." (Emphasis added.)

and the second of these new sections, K. S. A. 55-210, reads:

"*All liens* for labor and materials furnished to owners of leaseholds for oil and gas purposes, as may be provided by law, [1] shall be *enforced* in the same manner, and [2] *notice of the same* shall be given in the same manner (whether by the contractor, subcontractor, the materialman or laborer) as may be provided by law for enforcing liens of mechanics and others against real estate. All other liens and mortgages on leaseholds for oil and gas pur-

poses shall be enforced and foreclosed in the same manner as may be provided by law for enforcing liens and mortgages against real estate. After sale of the property there shall be no redemption, and the sheriff shall make a formal conveyance of all the property so sold to the purchaser, in one deed of conveyance." (Numbers in brackets and emphasis added.)

A careful study of the oil and gas lien statutes, as they are presently constituted, does not represent the work of a master in the art of legislative draftsmanship, but we think the intention of the legislature can be ascertained.

By virtue of K. S. A. 55-208, K. S. A. 55-209 applies equally to contractors and subcontractors.

A study of section 3 of the original lien law discloses that it made specific reference to three matters: (1) *Enforcement* of the lien; (2) *notice* of the lien; and (3) *the filing* of the lien. After the repeal of section 3 of the original oil and gas lien law, 55-209, *supra,* (enacted in 1923) when carefully studied, was designed to replace the repealed portion of section 3 which pertained to *the filing* of the lien. That is, the 1923 revision of 55-209, *supra,* intended to make the oil and gas lien law self-contained and independent from the general mechanic's lien law insofar as *the filing* of the lien statement was concerned.

Provision is specifically made in 55-209, *supra,* as it now reads, for the *time* in which such lien statement must be filed in these words: "Such statement shall be filed within four months after the date upon which material was last furnished or labor last performed under contract as aforesaid."

Since this section applies equally to contractors and subcontractors, there is no question but that a subcontractor is entitled to file his lien statement within the four-month period.

This question has been considered in previous decisions. The case of *Bittenbender v. Fisher,* 121 Kan. 458, 247 Pac. 849, involved a lien statement of a subcontractor which was filed before the 1923 revision became effective. The court there held under the law, as it existed prior to the revision of 1923, that a subcontractor was required to file his lien statement within the sixty-day period, but that the filing period was changed to four months by the revision of 1923. The court stated:

". . . The lien statement was filed March 22, 1923, seventy days after the last item of material was furnished. The defendants urged that this was too late. The present statute, which became effective December 27, 1923, allows statements for liens on oil and gas leases to be filed within four months

after the furnishing of the last item. (R. S. 55-209.) When the transaction referred to took place, however, the statute concerning liens on oil and gas leases (Laws 1909, ch. 159, § 3) referred to the mechanic's lien law for the rule fixing the time of filing statements, and it allows four months where the material was furnished to the owner (R. S. 60-1402), but only sixty days where it was furnished to the contractor (R. S. 60-1403). . . ." (p. 459.)

The *Bittenbender* case is buttressed by the later decision of *Sawtelle v. Cosden Oil & Gas Co.*, 128 Kan. 220, 227 Pac. 45. There a laborer who was clearly a subcontractor having no direct contractual relationship with the owner of the oil and gas leasehold, was held to have four months from the date the labor was last performed within which to file his lien statement. The court there stated:

"Part of defendants' argument on this point is based on the assumption that the time had gone by in which the laborers could have subjected the property to their statutory liens. The contention is untenable. The contractor threw up the job on or about December 7, 1925. The alleged agreement relied on to support this action was made, if at all, on March 8, 1926, three months later. There was still about a month's time in which to subject the property to statutory liens. (R. S. 55-207, as amended by Laws 1925, ch. 197.)" (p. 223.)

It is to be noted the court in *Sawtelle* relied in part upon the amendment to section 1 of the oil and gas lien law which became effective on March 23, 1925. This amendment provided that the performing of labor or the furnishing of material or equipment under a series of contracts would be construed as a single transaction, provided that not more than four months elapsed between the dates of furnishing such material or labor. Thus, this amendment, commonly known as a "tacking" provision, furnishes another sound reason for allowing a subcontractor a period of four months in which to file his lien statement. If the subcontractor were required to file his lien statement within sixty days after last furnishing material, he would be denied the benefit of the "tacking" provision which specifically states that a period of four months may exist between contracts without losing a right to a lien.

Practical considerations in the petroleum industry itself no doubt influenced the legislature to make this change. The practice in the industry for suppliers of oil well drilling equipment and supplies is to carry an account for sixty days from the date of the invoice before it becomes due. Many suppliers have retail outlets in the field where the actual sales and entries are made. However, the accounting and billing is normally done at the supplier's home office which may be many miles distant from the point of sale and

perhaps not even in the state of Kansas. The invoice date, therefore, in most cases is several days or possibly weeks later than the actual delivery date of the material or equipment. The normal situation in the industry, therefore, is that in many situations the account does not even become due until more than sixty days have elapsed from the time the materials or supplies were delivered.

We think it clear, and therefore hold, that under the provisions of 55-209, *supra,* a subcontractor who furnishes materials under a contract with the driller of an oil and gas well may file his lien statement within four months after the date upon which such materials were last furnished under the contract. Here the lien statement was filed two days short of four months after the materials were last furnished, and as such it was filed within the requisite time.

Was notice of the filing of the lien herein required?

The trial court specifically held that the provision of the general mechanic's lien law (K. S. A. 60-1103), requiring subcontractors to give notice of the filing of the lien statement to the owners of the real estate, was incorporated into the oil and gas lien law by the provisions of K. S. A. 55-210.

The appellant argues the natural division of the four sections in the oil and gas lien law, as it is presently constituted, is first, their creation and perfection by 55-207 through 55-209, *supra,* and second, their enforcement and foreclosure by 55-210; that the last section incorporates the enforcement and foreclosure sections of the code of civil procedure.

With respect to the creation and perfection of oil and gas mechanic's liens, the appellant argues the provisions of 55-207, 55-208 and 55-209, *supra,* are self-contained and do not require the borrowing of provisions from the general lien law relating to real estate. The appellant contends 55-209, *supra,* requires no notice to the owners.

The appellant argues the trial court was misled as to notice by reading K. S. A. 55-210. This section, the appellant argues, pertains only to the *enforcement* of liens; that the expression, "notice of the same," relates to the preceding phrase "All liens . . . shall be enforced" in the same manner as provided by law *for enforcing* liens against real estate.

The appellant concludes that in 55-210, *supra,* "notice . . . for enforcing liens . . . against real estate" means service of process, citing K. S. A. 60-307 [3] and 60-601.

We fail to see merit in the appellant's argument. In *Marion Machine Co. v. Allen,* 119 Kan. 770, 241 Pac. 450, the court was concerned with a transaction which occurred prior to the 1923 revision of the oil and gas lien law. The case was therefore controlled by the prior law, which would require subcontractors to give notice of the filing of the lien statement to the owners of the leasehold. (L. 1909, ch. 159, §3.) This section of the statute, then in force, relating to the creation and enforcement of liens on oil and gas property, provided that notice of the lien should be given in the same manner as required in obtaining ordinary mechanic's liens. The court went on, however, in a dictum to say:

". . . However, there is no substantial difference in the provision mentioned relating to notice and that provided in R. S. 55-210. The result of this reference is to incorporate the provisions of the general mechanics' lien law respecting the enforcement of liens on oil and gas properties, including the giving of notice, into the statute relating to oil and gas liens. That provision makes notice as essential to create and enforce a lien on an oil and gas leasehold as in establishing an ordinary mechanic's lien on real estate. (*Supply Co. v. Oil Co.,* 110 Kan. 468, 204 Pac. 692; *Ball v. Oil & Gas Co.,* 113 Kan. 763, 216 Pac. 422.) . . ." (p. 772.)

Since the decision in *Marion Machine Co. v. Allen,* supra, it has been consistently cited for the proposition that notice to the owner of the leasehold is essential to the creation of a valid subcontractor's lien; that in this respect the special statute is governed by the general statute. (See article entitled "The Creation and Enforcement of Mechanics' Liens Against Leasehold and Equipment" by J. B. McKay in 8 J. B. K. 63.)

Reference to section 3 of the original oil and gas lien law of 1909, above quoted with numbers inserted, and to 55-210, *supra,* above quoted with numbers inserted, will disclose that provisions 1 and 2 in section 3 of the original law have been retained intact, using the same identical wording, and incorporated as such into 55-210, *supra.* In other words, "notice of the same" was construed in section 3 of the original law to mean *notice of the lien* shall be given in the same manner as in the mechanic's lien law. By retaining the expression "notice of the same" in provision [2] of 55-210, *supra,* consistency would dictate that the legislature intended the expression "the same" to have reference to *all liens,* thus making the statute read that notice of all liens shall be given in the same manner (whether by the contractor, subcontractor, the materialman

or laborer) as may be provided by law for *enforcing* liens of mechanics and others against real estate.

Unfortunately, the legislature used the word "enforcing," in 55-210, *supra,* above italicized, and the appellant seizes upon this expression. Actually, enforcing a lien bears a direct relationship to the notice given upon filing the lien. Under our many decisions a mechanic's lien is not enforceable unless notice has been given in strict conformity with the mechanic's lien statute. (*Clark Lumber Co. v. Passig,* 184 Kan. 667, 339 P. 2d 280; and *Jones v. Lustig,* 185 Kan. 208, 341 P. 2d 1018.)

In view of the retention of provision [2] as numbered in 55-210, *supra,* in the same form as it originally appeared in section 3 of the oil and gas lien law of 1909, we think the foregoing construction more nearly approaches the legislative intent in the oil and gas lien statutes than the theory advanced by the appellant in its argument. Accordingly, we hold that 55-210, *supra,* with respect to the requirement of notice incorporates the provisions of K. S. A. 60-1103, which provides in part:

". . . the claimant shall mail a copy of the lien statement to the owner of the property and to any party obligated to pay the same by restricted registered or certified mail, or if the address of the owner or such party obligated to pay the same is unknown, and cannot with reasonable diligence be ascertained, a copy of the lien statement shall be posted in a conspicuous place on the premises."

The appellant calls our attention to the fact that 60-1103, *supra,* as amended by the Laws of 1963, chapter 303, does not mention notice at all.

The provision for notice in the prior law read:

". . . and by serving a notice in writing of the filing of such a lien upon the owner of the land: . . ." (G. S. 1949, 60-1403.)

The simple answer to the appellant's argument on this point is that K. S. A. 55-210 was enacted in 1923 long prior to the 1963 amendment to the mechanic's lien law, and reference to the giving of notice as required in the mechanic's lien law as to real estate was clearly established. When G. S. 1949, 60-1403, was amended by the Laws of 1963, the substitute provision appearing in K. S. A. 60-1103 took its place. The fact that the word "notice" is no longer used in 60-1103, *supra,* is immaterial. It still retains a provision for giving notice to the owner of the property sought to be charged with the lien, even though somewhat relaxed in the manner of giving

such notice, that is, by mailing "a copy of the lien statement to the owner of the property and to any party obligated to pay the same by restricted registered or certified mail." Of necessity, the notice requirement in 55-210, *supra*, which has not been changed since its enactment in 1923, must refer to the substituted provision designed to give notice as it now appears in 60-1103, *supra*.

The record before the trial court discloses the appellant to be a subcontractor, as found by the trial court, and it is conceded no effort was made by the appellant to comply with the provisions of 60-1103, *supra*, designed to give notice to the owners of the leasehold. It has been said many times in mechanic's lien cases that there is no privity of contract between the subcontractor and the owner, and the former can only obtain a lien by compliance with the statutory provisions. It is not enough that the claimant furnished the material and filed his lien. Compliance with the provisions of the statute designed to give notice is one of the necessary steps. (*Clark Lumber Co. v. Passig*, supra; *Jones v. Lustig*, supra; and *Baker v. Griffin*, 120 Kan. 448, 243 Pac. 1057.)

The right to claim and enforce the appellant's lien being statutory, the action to enforce the lien can only be maintained on the basis of a record disclosing compliance with the statute. In this respect the appellant has failed, and the trial court properly concluded on the basis of the record that the appellant was not entitled to enforce its lien against the owners of the oil and gas leasehold estate.

In the petition the appellant alleged Branum to be the "defendant's agent," and it is suggested this point remains to be an unresolved issue in the case; hence it was improper to sustain a motion for summary judgment.

Analysis of the argument advanced by the appellant on this point in its brief is not convincing. The appellant's petition is stated in two counts. The first simply alleged Branum "owes plaintiff $837.05 and interest, according to the account hereto annexed as Exhibit A." The second alleged the items were sold to "Joe Branum, defendant's agent therefor, for use" upon an oil and gas lease, dated November 1, 1961 (giving the description), and that plaintiff filed its statement for a mechanic's lien on said lease in the office of the clerk of the district court, within four months from the last date of furnishing said items (attaching a copy of the lien statement). It further alleged the defendants, except Branum, are the owners of

the working interest in said oil and gas lease, and the items of account upon which said lien is based are past due and said lien should be foreclosed upon the working interest and the lease sold. The prayer reads:

"WHEREFORE plaintiff prays judgment against Joe Branum in the sum of $837.05 and interest; that its mechanics lien be decreed to be a first and prior lien upon said oil and gas lease to the extent of $766.26 and interest, and be foreclosed and sold according to law; and that it have the costs of this action."

Briefly summarized, the petition alleges a cause of action for a money judgment against Branum on an account, and alleges the establishment of a lien against the owners of the leasehold which it seeks to foreclose.

Having declared the lien invalid on the record presented, the only material point upon which the appellant could assert agency on the part of Branum would be to establish that the appellant was dealing with the owners of the leasehold, through an agent, thus warranting recovery of a money judgment against the owners of the working interest of the oil and gas leasehold estate on the account, wholly aside from the lien. But nowhere does the petition allege or seek recovery from the owners of the working interest on this theory. Absent a pretrial order specifically defining the issues in a case, it is necessary to look to the pleadings for the issues to be determined.

Even assuming, without deciding, under our code which authorizes notice pleading, that a basis for recovery is alleged on the ground of agency, wholly aside from the existence of a lien, and placed in issue by the answers of the defendants, the record still does not disclose the trial court erred in sustaining a motion for summary judgment as it did. Here the appellant asserts the drilling contract between the Kim Oil Company, Inc. and Branum, which was put into the record by the answer of Kim Oil Company, Inc., and the affidavit of Richard M. Driscoll, its president.

In its brief the appellant relies on special provisions of the drilling contract and various passages therein, quoted in isolation, to fortify its argument that Branum was the agent of Kim Oil Company, Inc., one of the owners of the working interest in the oil and gas lease.

While the record fails to disclose this point was presented to the trial court, a careful study of the drilling contract, read in context, does not warrant the legal conclusion that Branum was the agent

of Kim Oil Company, Inc., in drilling the test well upon the oil and gas lease in question. Where the appellant asserts a drilling contract, as here, it is bound by the legal import of such contract.

Upon careful examination of the whole record we cannot say the trial court erred in sustaining a motion for summary judgment in favor of the defendants, except Branum, and against the appellant.

The judgment of the lower court is affirmed.