No. 52,481

INTERLAKE, INC. *Appellee,* v. THE KANSAS POWER & LIGHT COMPANY, *Appellant,* and ABRAHAM DAVIS, *Defendant.*

(644 P.2d 385)

Opinion filed May 8, 1982.

*James D. Waugh,* of Cosgrove, Webb & Oman, of Topeka, argued the cause, and *David S. Black,* of Kansas Power and Light Company, of Topeka, was with him on the brief for appellant.

*Irwin E. Blond,* of Lathrop, Koontz, Righter, Clagett & Norquist, of Kansas City, Missouri, argued the cause and *Robert J. O'Connor,* of Hershberger, Patterson, Jones & Roth, of Wichita, and *Larry Winn, III,* of Bennett, Lytle, Wetzler, Winn & Martin, of Prairie Village, were with him on the briefs for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an action to foreclose a mechanic's lien for pipe supplied for installation in a gas pipeline. The trial court held in favor of the lien claimant, Interlake, Inc., and the pipeline property owner, Kansas Power and Light Company, appeals therefrom. The Court of Appeals affirmed the trial court with modification relative to allowances of prejudgment interest [*Interlake, Inc. v. Kansas Power & Light Co.,* 7 Kan. App. 2d 16, 637 P.2d 464 (1981)]. The case is before us on petition for review.

The issue is whether Interlake is entitled, under the laws of Kansas, to a lien against the property. Specifically, KPL contends that Interlake is not within any classification afforded protection by the mechanics' lien statutes applicable to gas pipelines (K.S.A. 55-207 to 55-210 inclusive) and hence is not entitled to a lien. There is no claim by KPL that the lien statement was incorrect as to form, contents or procedure or that the action was not filed within the time permitted by statute for the filing of actions to foreclose a mechanic's lien.

Inasmuch as resolution of the issue involves determination of

the legal relationships of the parties, the relevant facts must be set forth in considerable detail. KPL is the owner of a certain pipeline, pipeline gathering system and pipeline easement in Meade County. In April of 1976, KPL contacted Continental Pipe and Tube Corporation, at St. Louis, Missouri, for price quotations on needed pipe for the pipeline construction. The quoted price was satisfactory and KPL issued its purchase order to Continental for the pipe. KPL had a contract with Plexco, an Illinois firm, to coat the pipe. Accordingly, KPL directed that the pipe be shipped to Plexco. KPL was advised that Continental would fill the pipe order with pipe it would purchase from Interlake, Inc., whose principal place of business is situated in Illinois. Continental issued a purchase order to Interlake for pipe, directing Interlake to ship the pipe to Plexco. The contract between Interlake and Continental had specialized provisions as to how and when Continental was to pay for the pipe. A degree of protection was afforded Interlake in that a maximum credit of $50,000 was to be advanced to Continental. Unfortunately, Interlake ignored the protective provisions it had caused to be inserted in the contract and delivered pipe in excess of the credit limitation.

During the spring and summer KPL purchased a wide range of materials needed for the pipeline project from other suppliers. On July 28, 1976, KPL entered into a contract with J & B Construction Company to construct the pipelines, utilizing KPL's materials except for a few specified items not relevant herein. J & B Construction had no contracts with Plexco, Continental or Interlake. The project was completed and KPL paid all firms with whom it had contracted to perform services or supply materials. Continental was paid in full, but it paid Interlake only a portion of what was owed. Continental became insolvent and was adjudicated bankrupt.

Interlake perfected a mechanic's lien and brought this action against KPL and Abraham Davis, trustee in bankruptcy for Continental, for foreclosure thereof. The trial court held that Interlake had a valid mechanic's lien on the pipeline property and ordered the same foreclosed, unless the lien was previously satisfied. KPL appeals therefrom. Interlake cross-appealed from the trial court's denial of prejudgment interest. The Court of Appeals affirmed the judgment but remanded for allowance of prejudgment interest. The trustee for Continental does not appeal.

Reference to specific dollar amounts has been deliberately avoided in the above factual recitation. This has been done for the sake of simplicity inasmuch as all the contracts referred to involved supplying materials or services for more than just the Meade County portion of the pipeline project which is the subject of this litigation. It is sufficient to say that the parties have agreed that $227,769.98 is the value of the pipe sold by Interlake and subsequently laid in Meade County. Interlake received payment for said pipe from Continental in the amount of $109,487.31. Thus Interlake's claim for a mechanic's lien in Meade County is $118,282.67. There is no dispute as to this being the proper figure. As previously noted, the sole issue is whether Interlake comes within any classification afforded protection under the pertinent statutes.

Gas pipeline mechanics' liens are created and governed by the provisions of K.S.A. 55-207 to 55-210 inclusive. The general lien statutes (K.S.A. 60-1101 *et seq.*) do not apply to oil and gas leases [*Mountain Iron & Supply Co. v. Branum,* 200 Kan. 38, 41, 434 P.2d 1015 (1967)]. Oil and gas lien laws confer special privileges, are to be strictly construed against one claiming the privilege, and their scope is not to be extended beyond that clearly granted by the legislature. *Gaudreau v. Smith,* 137 Kan. 644, 21 P.2d 330 (1933). It is therefore incumbent upon Interlake to establish that it is clearly within some classification authorized by the legislature to assert a lien.

The two statutes permitting the assertion of a lien against oil and gas leaseholds or pipelines are K.S.A. 55-207 and 55-208.

K.S.A. 55-207, in effect in its present language since 1925, provides:

"Any person . . . who shall under contract, express or implied, with . . . the owner of any gas pipe line . . . or with the . . . agent of such owner, who shall perform labor or furnish material . . . shall have a lien upon the . . . gas pipe line . . . ."

It is undisputed that there was no contract between the supplier of materials, Interlake, and the pipeline owner, KPL. Likewise, the evidence is lacking that Continental acted as the agent of KPL in its dealings with Interlake. Clearly, K.S.A. 55-207 confers no lien right upon Interlake under the facts herein.

If Interlake has a right to a lien, it must bring itself within a classification granted such protection by the provisions of K.S.A. 55-208, unchanged since its enactment in 1909, which provides:

"Any person, copartnership or corporation who shall furnish such machinery or supplies to a subcontractor under a contractor, or any person who shall perform such labor under a subcontract with a contractor, or who as an artisan or day laborer in the employ of such contractor, and who shall perform any such labor, may obtain a lien upon said leasehold for oil and gas purposes or any gas pipe line or any oil pipe line from the same tank and in the same manner and to the same extent as the original contractor for the amount due him or her for such labor, as provided in K.S.A. 55-207."

The trial court (and the majority of the Court of Appeals panel herein) concluded Interlake had a lien right under K.S.A. 55-208. We do not agree.

K.S.A. 55-208 expressly affords protection to: (1) a legal entity furnishing machinery or supplies to a subcontractor under a contractor; (2) a person performing labor under a subcontract with the contractor; and (3) an artisan or day laborer employed by a contractor. Protection was judicially extended to a fourth category in *Mountain Iron.* That fourth category is suppliers of materials to a contractor. It would, after all, be wholly illogical if protection were afforded to a materialman supplying a subcontractor but not to a materialman supplying a contractor. *Mountain Iron* represents basically a judicial correction of a statutory omission rather than an extension of the scope of the statute.

Interlake contends it is either within the first or fourth category depending on how the terms "contractor" and "subcontractor" are defined. KPL denies Interlake is within either category. Interlake asserts the correct meaning of contractor is the broad definition—one who contracts. A subcontractor is then merely one who contracts with a contractor to perform all or part of the original contract. Under this interpretation, contractors and subcontractors may supply either labor or materials or both. KPL argues that this broad definition is inappropriate to mechanics' lien statutes and that in such context, contractors and subcontractors refer to those who actually construct as opposed to those who just supply materials.

It is certainly true that there is language in some opinions of this court which appears to support Interlake's definitional position. In *Stewart v. Cunningham,* 219 Kan. 374, 377, 548 P.2d 740 (1976), the court was called upon to construe certain provisions of the general mechanics' lien statutes (K.S.A. 60-1101 *et seq.*). Factually, the owner signed a contract with a firm to perform the

plumbing, heating and air conditioning portion of a motel construction project. The owner subsequently signed a contract with a general contractor, and directed that the plumbing contract be treated as a subcontract thereto. There were some notice problems which made determination of whether the plumbing firm was a contractor or a subcontractor a key issue. There was no contention that the plumbing firm served only as a materialman. The court did cite the following general statement from 57 C.J.S., Mechanics' Liens § 90, p. 602:

"A contractor is one who furnishes labor or materials under a contract direct with the owner for the improvement of property." 219 Kan. at 377.

*Mountain Iron & Supply Co. v. Branum,* 200 Kan. 38, concerns a dealer in oil well supplies seeking to enforce a lien for supplies furnished a drilling contractor. This court's opinion refers to the supplier as a "materialman subcontractor." The principal problem in the *Mountain Iron* case was whether the supplier's failure to send notice of lien to the owner defeated the claim. The court held that the lien was fatally defective for lack of notice.

We conclude the loose language utilized in both *Stewart* and *Mountain Iron,* which appears to include suppliers of material within the terms contractors and subcontractors, was merely incidental to the holdings, and we do not consider such to be determinative of the issue herein.

An excellent discussion of the various classes of potential lien claimants can be found in 53 Am. Jur. 2d, Mechanics' Liens. The following excerpts are particularly significant:

"§ 71. Materialmen.

"The right to assert a mechanic's lien is now generally extended to materialmen or those persons who supply materials for the structure and have no other connection with the work. But materialmen, to be entitled to a lien, must be specifically referred to within the statute, for it cannot be extended to that class by construction. Thus, materialmen are not generally within the term 'contractor' or 'subcontractor.'

"§ 72. Contractors or subcontractors distinguished.

"In some jurisdictions there is no distinct class of 'materialmen.' The statutes confer the right to a lien on persons furnishing materials but designate them as contractors or subcontractors, depending on whether such persons furnish materials to the owner of a structure or to the contractor constructing it. Generally, however, a distinction is made, at least for some purposes, between contractors or subcontractors on the one hand and materialmen on the other, based upon the nature of the person's contract obligation, and materialmen are not generally within the term 'contractor' or 'subcontractor.'

*"Where a distinction is made between a subcontractor and a materialman, a person, to become a subcontractor rather than a materialman must generally do something more than merely furnish materials.* It has been declared that *he must actually construct with such materials some part of the structure which the contractor has agreed to erect,* although this construction, at least in some jurisdictions, need not be at the jobsite. Thus, the rule is laid down that the essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract, not that he enters upon the jobsite and does the construction there.

"Accordingly, it is held that *one who merely furnishes materials to the owner or a contractor is a materialman, and not a contractor or subcontractor, within the meaning of the mechanic's lien laws . . . .*

"§ 73. Suppliers of a materialman or subcontractor.

*"Persons supplying materials to a materialman* or a subcontractor *must come clearly within the terms of the statute, or they can claim no lien. They are so far removed from the owner that the privilege of a lien is not often extended to them, and the plainest expressions of law must be used to entitle them to this remedy.* Thus, where a construction company, engaged in building a church, placed an order for certain materials required in the construction of the church, understanding that such material would be obtained from a certain manufacturer, the manufacturer of the materials was held to have no right to a lien against the church in which the materials were incorporated. Materialmen in the second degree may, however, be provided for by a statute which expresses with sufficient clearness an intent to this effect. Under some statutes it is stated that a supplier of a materialman is not entitled to a lien but that a supplier of a subcontractor is." pp. 582-86. (Emphasis supplied.)

Continental contracted to sell pipe to the property owner, KPL. Continental did not install the pipe nor add to nor improve the pipe in any way. In fact, Continental never had physical possession of the pipe. We believe that Continental must be considered to be a materialman. It simply furnished materials under contract with the owner. Accordingly, Continental, had it not been paid, would clearly have been afforded protection under K.S.A. 55-207.

Interlake sold materials to Continental. Interlake then is a supplier to a materialman—a class so far removed from the owner that only the "plainest expressions of law" must be used to entitle the class to lien protection. Do the oil and gas lien statutes (K.S.A. 55-207 to 55-210 inclusive) clearly provide that suppliers to materialmen are entitled to the special privilege of asserting a lien against the property? We believe not.

There is no provision in either K.S.A. 55-207 or 55-208 evincing

a legislative intent that suppliers to materialmen are included within the term "subcontractor." In fact the traditional classifications are specifically set forth in K.S.A. 55-210 which provides:

"All liens for labor and materials furnished to owners of leaseholds for oil and gas purposes, as may be provided by law, shall be enforced in the same manner, and notice of the same shall be given in the same manner (*whether by the contractor, subcontractor, or materialman or laborer*) as may be provided by law for enforcing liens of mechanics and others against real estate." (Emphasis supplied.)

We therefore conclude: (1) Interlake served herein as a supplier to Continental, a materialman; (2) a supplier to a materialman is afforded no protection under the gas and oil lien statutes (K.S.A. 55-207 to 55-210 inclusive); and (3) the trial court erred in holding Interlake had a valid lien and ordering same foreclosed.

The judgment of the trial court is reversed and the cause is remanded with directions to enter judgment in favor of the landowner in accordance with this opinion.

PRAGER, J., not participating.