(782 P.2d 357)
No. 63,764

SFELD ENGINEERING, INC., *Appellee,* v. FRANKLIN SUPPLY COMPANY and MOBIL OIL CORPORATION f/k/a NORTHERN NATURAL GAS PRODUCING COMPANY, *Appellants.*

Opinion filed November 17, 1989.

*Daniel H. Diepenbrock,* of Neubauer, Sharp, McQueen, Dreiling & Morain, P.A., of Liberal, for appellant.

*Greg L. Bauer,* of McPherson, Bauer, Pike & Pike, Chtd., of Great Bend, for appellee.

Before ABBOTT, C.J., BRAZIL AND LARSON, JJ.

BRAZIL, J.: Mobil Oil Corporation (Mobil) appeals a district court decision granting Sfeld Engineering, Inc., (Sfeld) summary

judgment and finding that Sfeld had valid liens on three oil and gas leases and could foreclose the liens against Mobil. We affirm.

The parties stipulated to the facts of the case. Mobil placed an order with Franklin Supply Company (Franklin) to purchase three water tanks to be delivered and set up at three of Mobil's lease locations. Franklin requested Sfeld to supply and deliver the tanks to Mobil. Each of the tanks was shipped to a leasehold site in two parts. There, Sfeld bolted the halves together, lined the insides with fiberglass, and placed the fittings as directed by the Mobil representative. The tanks were further installed and put into operation by F & O Roustabouts, an independent contractor retained by Mobil. Mobil paid Franklin, but Franklin refused to pay Sfeld. Sfeld filed a statement of lien claim covering the delivered equipment within six months of the delivery dates. Sfeld filed an action to foreclose on the three liens and a motion for summary judgment. The trial court granted summary judgment to Sfeld and determined that Sfeld possessed three valid liens covering Mobil's oil and gas leases, which Sfeld was entitled to foreclose.

The facts in this case are undisputed. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When reviewing a grant of summary judgment, this court must read the record in the light most favorable to the party who defended against the motion. *Danes v. St. David's Episcopal Church,* 242 Kan. 822, 830, 752 P.2d 653 (1988). This case involves a determination of the legal relationship between the parties and is subject to unlimited review. *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

Liens on oil and gas leases are created and governed by the provisions of K.S.A. 55-207 to 55-210 inclusive. "Oil and gas lien laws confer special privileges, are to be strictly construed against one claiming the privilege, and their scope is not to be extended beyond that clearly granted by the legislature." *Interlake, Inc. v. Kansas Power & Light,* 231 Kan. 251, 253, 644 P.2d 385 (1982). Sfeld must establish that it is statutorily authorized to assert a lien. K.S.A. 55-207 provides in relevant part:

"Any person, corporation, or copartnership who shall under contract, express or implied, with the owner of any leasehold for oil and gas purposes, . . . or with the trustee or agent of such owner, who shall perform labor or furnish material . . . used in . . . completing, operating or repairing of any oil or gas well or who shall furnish any oil-well supplies or perform any labor in constructing or putting together any of the machinery used. in . . . operating, completing or repairing of any gas well, shall have a lien upon the whole of such leasehold . . . ."

K.S.A. 55-208 provides:

"Any person, copartnership or corporation who shall furnish such machinery or supplies to a subcontractor under a contractor, or any person who shall perform such labor under a subcontract with a contractor, or who as an artisan or day laborer in the employ of such contractor, and who shall perform any such labor, may obtain a lien upon said leasehold for oil and gas purposes or any gas pipe line or any oil pipe line from the same tank and in the same manner and to the same extent as the original contractor for the amount due him or her for such labor, as provided in K.S.A. 55-207."

The *Interlake* court, in discussing the categories afforded protection by K.S.A. 55-208, said:

"K.S.A. 55-208 expressly affords protection to: (1) a legal entity furnishing machinery or supplies to a subcontractor under a contractor; (2) a person performing labor under a subcontract with the contractor; and (3) an artisan or day laborer employed by a contractor. Protection was judicially extended to a fourth category in *[Mountain Iron & Supply Co. v. Branum*, 200 Kan. 38, 434 P.2d 1015 (1967)]. That fourth category is suppliers of material to a contractor. It would, after all, be wholly illogical if protection were afforded to a materialman supplying a subcontractor but not to a materialman supplying a contractor. *Mountain Iron* represents basically a judicial correction of a statutory omission rather than an extension of the scope of the statute." *Interlake, Inc. v. Kansas Power & Light*, 231 Kan. at 254.

In *Interlake*, KP&L was expanding a natural gas pipeline in southwest Kansas. KP&L issued a purchase order for pipe to Continental Pipe & Tube Corporation and contracted with a separate construction company to construct the pipeline. Continental contracted with Interlake to furnish the pipe; Interlake shipped the pipe to Plexco, another KP&L contractor, to coat the pipe. Continental failed to fully pay Interlake, so Interlake filed an oil and gas mechanic's lien against KP&L. 231 Kan. at 252. The trial court held and this court affirmed that Interlake had a valid lien under K.S.A. 55-208. 231 Kan. at 254. The Supreme Court re-

versed and concluded that Continental must be considered to be a materialman, that Interlake served as a supplier to a materialman, and that a supplier to a materialman is afforded no protection under the oil and gas lien statutes. 231 Kan. at 256-57. In reversing, the court relied on the following discussion of the various classes of potential lien claimants found in 53 Am. Jur. 2d, Mechanics' Liens §§ 71, 72, 73:

" '§ 71. Materialmen.

" 'The right to assert a mechanic's lien is now generally extended to materialmen or those persons who supply materials for the structure and have no other connection with the work. But materialmen, to be entitled to a lien, must be specifically referred to within the statute, for it cannot be extended to that class by construction. Thus, materialmen are not generally within the term "contractor" or "subcontractor."

" '§ 72. Contractors or subcontractors distinguished.

" 'In some jurisdictions there is no distinct class of "materialmen." The statutes confer the right to a lien on persons furnishing materials but designate them as contractors or subcontractors, depending on whether such persons furnish materials to the owner of a structure or to the contractor constructing it. Generally, however, a distinction is made, at least for some purposes, between contractors or subcontractors on the one hand and materialmen on the other, based upon the nature of the person's contract obligation, and materialmen are not generally within the term "contractor" or "subcontractor."

" '*Where a distinction is made between a subcontractor and a materialman, a person, to become a subcontractor rather than a materialman must generally do something more than merely furnish materials.* It has been declared that *he must actually construct with such materials some part of the structure which the contractor has agreed to erect,* although this construction, at least in some jurisdictions, need not be at the jobsite. Thus, the rule is laid down that the essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract, not that he enters upon the jobsite and does the construction there.

" '*Accordingly, it is held that one who merely furnishes materials to the owner or a contractor is a materialman, and not a contractor or subcontractor, within the meaning of the mechanic's lien laws* . . . .

" '§ 73. Suppliers of a materialman or subcontractor.

" '*Persons supplying material to a materialman* or a subcontractor *must come clearly within the terms of the statute, or they can claim no lien. They are so far removed from the owner that the privilege of a lien is not often extended to them, and the plainest expressions of law must be used to entitle them to this remedy.* Thus, where a construction company, engaged in building a church, placed an order for certain materials required in the

construction of the church, understanding that such material would be obtained from a certain manufacturer, the manufacturer of the materials was held to have no right to a lien against the church in which the materials were incorporated. Materialmen in the second degree may, however, be provided for by a statute which expresses with sufficient clearness an intent to this effect. Under some statutes it is stated that a supplier of a materialman is not entitled to a lien but that a supplier of a contractor is.' pp. 582-86. (Emphasis supplied.)" 231 Kan. at 255-56.

This court must determine the legal status of Franklin and Sfeld. If Franklin is a contractor and Sfeld is a subcontractor, Sfeld's lien is valid. If Franklin is a materialman and Sfeld is a supplier to a materialman, Sfeld is provided no protection under the oil and gas lien statutes.

Franklin's agreement with Mobil provides that the tanks were to be delivered to Mobil's locations and set up. Sfeld performed the agreement for Franklin by delivering three tanks to the specified locations. At each location, Sfeld bolted the halves of the tanks together, lined the insides with fiberglass, and placed the fittings as directed by Mobil's representative. The tanks were difficult to transport because of their size and the possibility of damaging the fiberglass liner, so they were assembled at each location. Prior to placement of the fittings, Sfeld's activity was not sufficient to distinguish the case from *Interlake*. Also, storing each tank at a location on each leasehold under the direction of Mobil would not differ from delivering pipe to a specific location in the *Interlake* case.

The distinction from *Interlake* arises with the requirement by Mobil that Sfeld place the fittings on each tank under the direction of Mobil. After the tanks were assembled, they were installed and placed into operation by F & O Roustabouts by placing each tank partially below ground in a hole dug for the tank and by connecting a water line from the well to the tank. To accomplish this installation, it was the responsibility of Sfeld, under the direction of Mobil, to place the fittings on each tank at a point that would connect with the water line from each well. The placement of the fittings was done by Sfeld, not F & O Roustabouts, making each tank uniquely suited for each well.

In performing this service, Sfeld did something more than merely furnish materials; it actually constructed with such materials (the tanks) some part of the structure that the contractor

(Franklin) had agreed to erect at each well location. *Interlake*, 231 Kan. at 256. In this case, Franklin was a contractor, not a materialman, and Sfeld was a subcontractor, not a supplier to a materialman. Accordingly, Sfeld has a valid lien under K.S.A. 55-208.

Affirmed.